WILLIAM BORGMANN ET AL., APPELLANTS, V. FRED BORG-MANN ET AL., APPELLEES.

FILED MAY 15, 1923. No. 22312.

1. **Deeds:** CANCELATION: MENTAL CAPACITY: BURDEN OF PROOF. "Where it is sought to cancel a deed for the want of mental capacity of the grantor to make the instrument, the burden of proof is on the one who alleges the mental incapacity." *Brugman v. Brugman,* 93 Neb. 408.

2. ———: EXECUTION: MENTAL CAPACITY. "In determining the mental capacity of the grantor to execute a deed, if it clearly appears that when the instrument was executed the grantor had the capacity to understand what he was doing, knew the nature and extent of his property, and what he proposed to do with it, and to decide intelligently whether or not he desired to make the conveyance, it cannot be said that he was incompetent or incapable of executing the instrument." *Brugman v. Brugman,* 93 Neb. 408.

3. ———: FRAUD: PROOF. If fraud in the execution of a deed is alleged and denied, in the absence of proof showing such fraud, the deed will not be set aside.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*W. C. Frampton* and *D. J. Flaherty,* for appellants.

*H. J. Whitmore, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and GOOD, JJ., BEGLEY, District Judge.

ALDRICH, J.

Suit in equity brought in the district court for Lancaster county by William Borgmann and five other children and a grandson of Christian Borgmann and

Katherina Borgmann against Fred Borgmann to set aside a deed conveying 80 acres of land from Christian and Katherina Borgmann to Fred Borgmann. The trial court found for defendant and dismissed plaintiffs' petition. Plaintiffs appeal.

Since the filing of the appeal in this court, Minnie Busboom and Christian Borchers have filed disclaimers and asked to have the appeal dismissed as to them. The appellants here are William Borgmann, Marie Borchers and Louise Vogelsing.

The principal issue is the validity of the deed in litigation. Before discussing the propositions involved, a brief historical and biographical sketch of the principal figures in this lawsuit will be instructive and conclusive to a clear understanding of the facts.

Christian Borgmann, born in Germany, May 7, 1831, came to the United States while still a young man. He worked for a time in Missouri, then went to Iowa, where he married Katherina Taves. In 1865 he removed to Nebraska and homesteaded the northeast quarter of section 20, township 10, range 5, in Middlecreek precinct, Lancaster county. Here he and his wife reared their family. Six of their children are involved in this lawsuit: Louise, born April 3, 1859; William, born January 2, 1861; Minnie, born March 17, 1864; Herman, born February 24, 1869; Marie, born August 27, 1871, and Fred, born January 6, 1875. Christian Borchers, only son of Emma Borgmann, a deceased daughter, is also named in the pleadings.

When the sons William and Herman married in 1884 and 1893, respectively, the father gave each 80 acres of land, a team of horses and some farming equipment. The daughters at marriage received $200 in cash or personal property.

Fred, the youngest son, and defendant in this case, lived at home after the other children had left, and he worked the farm without wages until 1898, when he was 23 years of age. At that time he married Mary Schmale

and at the request of his parents brought his bride to the home place to live. For three years he rented the home place on shares. On December 12, 1898, the parents deeded to him the east eighty of the original homestead, but the deed was not delivered or recorded until the year 1901.

During the first year Fred and his wife lived on the place, a 14 by 18 addition was made to the house, and the first story of this was fitted up for the father and mother. The cost of the addition was paid in equal shares by Fred and his father. The father and mother took their meals with the family. Four children were born to Fred and his wife, and peace and harmony ruled in the home during all of the 21 years that elapsed from Fred's marriage to the death of his father. Neither Fred nor his wife received any compensation for the care and maintenance of his parents during all that time.

The father and mother, on February 9, 1915, executed to Fred a deed of the remaining or west eighty of the original homestead. The consideration recited was $1 and the agreement of the grantee, Fred Borgmann, "to support and take the best of care of the said grantors, Christian and Katherina Borgmann, during their lifetime." This is the deed involved in this lawsuit.

At the time the deed was executed Christian Borgmann was almost 84 years old and Katherina Borgmann was 77. In November, 1915, nine months after the deed was executed, Katherina Borgmann died from pneumonia. Christian Borgmann lived until September 12, 1919, or 4½ years after the making of this deed. No attempt was ever made by the grantors or either of them to repudiate or set the deed aside.

In February, 1921, the plaintiffs instituted this suit to have the deed of February 9, 1915, canceled and title quieted and confirmed in the heirs of Christian Borgmann.

Were the parents improperly influenced in deeding this west eighty to Fred in 1915, or was it a simple act of

Borgmann v. Borgmann.

justice and a fair recognition of his services to them? The evidence seems to answer in the negative as to improper influence and in the affirmative as to fair recognition of services. Was the kindness and affection worthy of reward and naturally reciprocated? No presumption of fraud arises from the relationship of parent and child. On this proposition see *Winslow v. Winslow*, 89 Neb. 189; *Ward v. Ward*, 86 Neb. 744; *Gibson v. Hammang*, 63 Neb. 349.

Another question raised is: Did Christian Borgmann have the mental capacity necessary to perform this transaction at the time he did in 1915? It is our opinion that he was as competent as any man of his age. Several witnesses who had known him for years and who had no interest in the outcome of the case testified that he was of sound mind at the time the deed was executed and was capable of attending to all his own business. He worked up almost to the last year of his life and was very active for his age. Witnesses testified that they never heard his mental capacity questioned until this suit was commenced. Dr. Hohlen, the family physician, gave strong and positive testimony that the grantor was mentally competent in 1915, and afterwards up to his death. This witness spoke of a slight shaking the grantor had in his hands, but explained that it accompanied old age and in this case did not in the least affect his mentality.

Mr. Hagensick, the notary public, who acknowledged the deed, testified that both the grantor and his wife were competent to attend to this business and apparently knew exactly what they were doing and what they wanted done.

On the question of fraud appellants contend that the grantor was made to believe he was giving Fred an option to buy the place. Their evidence at the trial was to the effect that the grantor thought he was giving Fred a right to build a barn on the place and be the preferred buyer. Such we do not believe was the case. Witnesses for plaintiffs testified that he made some such state-

ments. This was about a year after the death of Katherina Borgmann. The grantor was being harassed and annoyed by William and his daughters.

The notary public, Mr. Hagensick, took particular pains to read and explain the deed to the old people in German as well as English. Nothing was said at the time about an option. The grantor knew he was executing a deed.

The evidence shows that Christian Borgmann, a man of great age and feeble health, had the good sensible discretion to divide his property as he wanted it done, because he remembered it all, the amount each had received and the value thereof.

The judgment is

AFFIRMED.

Morrissey, C. J., dissents.

