SAMUEL M. LITTLE ET AL., APPELLANTS, V. ANNA F. CURSON, APPELLEE.

FILED JULY 14, 1926. No. 23834.

1. **Deeds:** CANCELATION: MENTAL CAPACITY: BURDEN OF PROOF. "Where it is sought to cancel a deed for the want of mental capacity of the grantor to make the instrument, the burden of proof is on the one who alleges the mental incapacity." *Hitchcock v. Guilliams, ante,* p. 522.

2. ———: ———: UNDUE INFLUENCE. "The undue influence which will avoid a deed is an unlawful or fraudulent influence which controls the will of the grantor." *Clark v. Holmes,* 109 Neb. 213.

3. ———: ———: QUANTUM OF EVIDENCE. The evidence of the

Little v. Curson.

attorney who prepared the deed, of the notary who took the acknowledgment, and of the witnesses to the execution of the deed, alleged to have been obtained by undue influence exerted by the grantee, that the deed was executed by the grantor understandingly and voluntarily, cannot ordinarily be overcome by evidence relating to different occasions.

4. ———: VOLUNTARY CONVEYANCE: PARENT AND CHILD: PRESUMPTION. The rule is well established in this jurisdiction, in a case of gift and voluntary conveyance from a parent to a child, no presumption of fraud or undue influence arises as between the parties thereto from the mere fact of the relation.

5. Gifts: VALIDITY: UNDUE INFLUENCE: PARENT AND CHILD. "The affection, confidence and gratitude of a parent to a child which inspires the gift is a natural and lawful influence, and will not render it voidable, unless this influence has been so used as to confuse the judgment and control the will of the donor." *Hacker v. Hoover*, 89 Neb. 317.

6. Evidence examined, and *held* that the findings and decree of the district court are supported by the evidence.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

*Clement L. Shinn* and *Burkett, Wilson, Brown & Wilson,* for appellants.

*Hall, Cline & Williams,* contra.

Heard before MORRISSEY, C. J., DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

This suit was originally brought in the district court for Lancaster county, Nebraska, to cancel conveyances of Lincoln real property made by Mary D. Little in her lifetime to the defendant, Anna F. Curson, her daughter, on the ground that these conveyances had been procured by fraud and undue influence, the amended petition alleging that the grantor, at the time of the execution of the instruments in suit, "was in poor health and in a weakened and debilitated condition of mind and body, and was wholly incompetent physically and mentally to transact business or to know and

understand her business affairs or the nature, amount and value of her property, or to know and comprehend the obligations and duties she owed to her offspring, and was unable to read and understand the terms of said pretended and purported deeds of conveyance, and unable to comprehend and understand the meaning and significance thereof." On issues joined in the lower court, there was a general finding for the defendant, judgment accordingly, and also a judgment quieting the title of the defendant to the interests in the Lincoln property conveyed to her by the deeds in controversy. Plaintiffs now appeal from this decree.

The following facts furnish the setting of this litigation: Samuel W. Little died testate in California on January 30, 1911, and his wife, Mary D. Little, departed this life in California on February 4, 1920. To them were born five children, one son Samuel M., and four daughters, Anna F., Lula M., Mary, and Emma. The daughters, Mary and Emma, died prior to the institution of this litigation. The sole heir of the latter died without issue prior to hearing of this case in the court below. The plaintiffs Mary L. Knapp, Ruby Harris, Victor Thompson, Jane R. Spencer, Ada F. Dolson, and Emma J. Held, are the children of the deceased daughter Mary and claim in her right. The daughter of Lula M. Scott is not a party to this litigation. The defendant, Anna F. Curson, was the eldest daughter of Samuel W. and Mary D. Little. She was married to Elijah Curson in Clarksburg, West Virginia, in 1867. Sometime after her marriage she, with her husband, removed from Clarksburg to Effingham, Illinois. To that place her father and mother and her brothers and sisters followed. In 1871 the Cursons moved to Lincoln, Nebraska, and in turn were followed again by the Little family. Ten years later the Cursons removed their family home to Los Angeles, California, and in 1884 were joined by Samuel W. and Mary D. Little. There these parents of Mrs. Curson continuously resided until the time of their deaths in 1911 and 1920, respectively. For 12 to 14 years prior to 1902 the Cursons lived in Los

·Angeles in a home owned by Samuel W. Little.  Mrs. Curson keeping the house, and her father and mother paying for their board.  Later the Cursons moved to San Francisco, where Mr. Curson died in April, 1902.  After his death his widow, Anna F. Curson, returned to Los Angeles and thereafter lived in the Little home.  She had charge of the household in which her parents lived.  After the death of Samuel W. Little on January 30, 1911, Anna F. Curson continued in charge of the home where her mother lived until the latter's death February 4, 1920.  During this time she managed the household and had charge of the servants and had the care of her mother, who was born September 11, 1824.  Samuel W. Little was, at the time of his death in 1911, the owner of property in California inventoried at $433,929.73, of which it appears $408,460 was distributed under the terms of the order settling final account and decree of distribution entered July 8, 1914, in the probate court of California having jurisdiction of his estate.  He also owned what is known in the record as the Little building and the Cerf building, both situated in Lincoln, Nebraska, the value of which, as stipulated by and between the parties in this case, was $325,000.

Under the circumstances that developed and existed after the death of Samuel W. Little, the provisions of his will, together with the ultimate election on the part of Mary D. Little to receive her statutory interest in the Nebraska real estate in fee simple, and her "community property" rights in California, the results were as follows:  Anna F. Curson received $8,365, the proceeds of a note received from her father in his lifetime; Lula M. Scott, daughter, and Delphina Little, daughter-in-law, each received a legacy of $500 per annum to continue for the period of 30 years; Mary D. Little, widow, received five-twelfths of all property belonging to the estate situated in California, except the sum of $24,544, one-third of Nebraska real estate in fee. simple, and the sum of $6,000 annually out of trust estate; fourteen grandchildren named, each were to receive and are receiving $50 annually to continue for the period

of 30 years, unless sooner terminated under conditions of
the will; $6,000 of the income of said estate was also equally
divided between Samuel M. Little, son, and Mary M. Thompson, daughter, so long as Mary D. Little lived; seven-
twelfths of the entire estate in California, plus $16,179.06,
including an undivided two-thirds of the Lincoln properties,
constitute the trust estate created under the will of Samuel
W. Little and which, by its terms, the interest accruing
thereon to be paid as above stated and the principal thereof
to be distributed in three equal amounts payable in 10, 20,
and 30 years after the death of Samuel W. Little, three-
fourths thereof to Samuel M. Little and Mary M. Thompson, and one-fourth thereof to the charities named in the
will.

The provisions of this will were unsatisfactory to all
members of the family, and on June 25, 1912, Mary D.
Little, Samuel M. Little, Mary M. Thompson, Lula M.
Thompson (formerly known in the record as Lula M.
Shaffner and later as Mrs. Scott), and Anna F. Curson in-
stituted a contest based on the grounds that Samuel W.
Little was incompetent at the time his will and codicils
thereto purport to have been executed, and for the further
reason that said will was not the will of Samuel W. Little,
but was the result of undue influence exercised over him
by William H. Avery. However, the contest was terminated
in a compromise. The trust estate, composed of seven-
twelfths of the California property and two-thirds of the
Nebraska real estate, remained as provided for by the will.
The six charities agreed to receive and were paid $49,500
in cash in lieu of all claims that they possessed under the
terms of the will. The following sums were also paid pur-
suant to the compromise: Spencer & Thompson, attorneys'
fees, $2,500; Lewis P. Ferguson, sole minor heir of Emma
West, deceased daughter, $12,500; James A. Gibson,
$10,000; Gage & Foley, attorneys' fees, $10,000 and costs.
In accordance with the settlement it appears that these
amounts, aggregating with costs the sum of $84,500, were
wholly paid from Mary D. Little's share of the California

property, and that there remained of her share of the California property, after the payments had been made, approximately $20,000 to $25,000 in value in personal property, together with interests in certain real estate situated in California.

To recapitulate under the terms of the will as modified by Mary D. Little's election to receive her share of community property in California, and her widow's right in Nebraska, the following was the approximate distribution to be made prior to the acceptance of the compromise:

| | | |
|---|---|---|
| Anna F. Curson | $ 8,365 | cash |
| Mary D. Little | 160,000 | California property |
| | 108,000 | Nebraska property |
| | 6,000 | cash per annum from income of trust estate |
| Trust estate | 240,000 | California property |
| | 217,000 | Nebraska property |
| Lula M. Scott | 500 | annuity per annum |
| Delphina Little | 500 | annuity per annum |

Three-fourths of the trust estate to be divided equally between Samuel M. Little and Mary M. Thompson, provided, in event of death, their children should succeed to deceased parent's share; the remaining one-fourth to be distributed to six charities named; all annuities to be paid from income of trust estate.

Taking up the contention of the plaintiffs that Mary D. Little, at the time of the execution of the two deeds in controversy in this action, was wholly without the necessary mental capacity to understand and comprehend what she was then doing, it is to be observed that—

"Where it is sought to cancel a deed for the want of mental capacity of the grantor to make the instrument, the burden of proof is on the one who alleges the mental incapacity." *Brugman v. Brugman*, 93 Neb. 408; *Borgmann v. Borgmann*, 110 Neb. 318; *Hitchcock v. Guilliams, ante,* p. 522.

Judge Barnes, in writing the opinion in *Brugman v. Brugman, supra,* made use of the following language:

"It is not every weakness of mind arising from old age

or sickness, or other causes, that will avoid a deed. There must be a total want of reason or understanding. *Johnson v. Phifer,* 6 Neb. 401. Mere mental weakness will not authorize a court of equity to set aside an executed contract. *Mulloy v. Ingalls,* 4 Neb. 115; *Schley v. Horan,* 82 Neb. 704; *Mann v. Keene Guaranty Savings Bank,* 86 Fed. 51. In order to vacate a deed on the ground of mental incapacity of the grantor, it is necessary to show such a degree of mental weakness as renders the maker of the deed incapable of understanding and protecting his own interest."

See, also, *Johnson v. Millard,* 110 Neb. 830; *Sawyer v. White,* 122 Fed. 223; *Ludwig v. Bressler,* 253 Fed. 8. The evidence in the record, in the light of the foregoing authorities, does not sustain the contention of the plaintiffs on this branch of their case.

The contention, however, upon which plaintiffs chiefly rely is that the Nebraska deeds are the fruits of fraud and undue influence. We fail, however, to find in the record any support for the statement that positive misrepresentations of facts or concealments were made by or in behalf of the defendant herein. Even the cause of the exclusion by Samuel W. Little of the defendant from the beneficial provisions of his will was known to his wife, as appears from the positive testimony of at least two witnesses called by the plaintiffs themselves. With this knowledge in her possession, Mary D. Little in the fall of 1914 journeyed from California to Pennsylvania for the purpose of paying a visit. On her return home she stopped off at Lincoln, Nebraska, and on September 28, 1914, alone with a nephew, who was then in charge of her business affairs in Nebraska, she discussed the situation and advised him, not only of her disapproval of the terms of the will of her husband, but that she intended to transfer her interest in the Lincoln real estate to her daughter, Anna F. Curson. Her nephew, at her request, then arranged for a meeting with Frank M. Hall, a reputable attorney of Lincoln, Nebraska, an old friend of the Little family, and who was then engaged as attorney for the Little estate and who had formerly been

employed by Samuel W. Little during his residence in Lincoln.  On the morrow Mary D. Little, accompanied by Anna F. Curson and her nephew, proceeded to the office of Mr. Hall, where the deed, dated September 29, 1914, was drawn under his direction, read, and carefully explained to Mrs. Little.  She, evincing full and complete knowledge of its terms, executed and acknowledged it in the presence of disinterested witnesses in a manner provided by law.  Of these facts all witnesses present were fully convinced and so testify.  This deed contains the following recital:

"Whereas, the party of the second part is the daughter of said party of the first part and of Samuel W. Little, deceased, and said Samuel W. Little has provided fully for all of the children of said party of the first part and said Samuel W. Little, by certain trusts in his last will and testament, excepting the said Anna F. Curson, for whom he provided only by a small legacy; and whereas, the said party of the second part has been a loving daughter and has for many years comfortably and tenderly cared for said party of the first part, and has resided with her and said party of the second part still resides with and comfortably and tenderly cares for said party of the first part as a loving daughter, and said party of the second part has agreed to reside with and care for said party of the first part for the remainder of her life or as long as desired by said party of the first part, or as long as said party of the second part shall live, in case said first party shall survive said second party."

Consideration of what was said and done at this time, in the light of the surrounding circumstances, leads us to the conclusion that no one could seriously question the mental capacity or physical powers of Mary D. Little on the 29th day of September, 1914; that she was fully advised and understood the nature of the instrument she was signing, and that it was her free and voluntary act, and at the time she executed it she fully intended its legal effect; and that she was subject to no undue influence at the time and place of the execution of this deed, and that the recitals contained

in the deed executed stated the facts and were approved by her.

In this connection we have not overlooked the fact that a form of deed which had been prepared in the office of Mr. Foley in Los Angeles had been transmitted to Mr. Hall and was made use of in dictating the deed actually filed, and that Mrs. Curson was with her mother and her mother's nephew at the time this was done, and we have given due consideration to the evidence as to the previous relations of the parties in California. This conclusion, it is thought, is at least in part supported by the fact that, though the deed in question was duly recorded in the office of the register of deeds in Lancaster county, Nebraska, on September 30, 1914, and though the plaintiffs herein had actual knowledge thereof at least three years prior to their ancestor's death in 1920, none of them ever questioned its validity until after that event.

It is also true that there is an entire absence of any evidence in the record indicating in any manner that Mary D. Little at any time regretted this conveyance. But, on the contrary, the subsequent deed executed by her, dated April 24, 1917, conveying to Anna F. Curson all rights reserved in favor of the grantor by the terms of the deed, now under consideration, tends to sustain the contrary conclusion. Then, too, the fact that this gift in 1914 was made in conformity with the expressed intention of Mary D. Little made years before is strongly evidenciary of a disposition free from undue influence or incompetency. *Sawyer v. White, supra.*

It would also seem that the evidence of the attorney who prepared the deed, of the notary who took the acknowledgment, and of the witnesses to the execution of the deed, alleged, to have been obtained by undue influence exerted by the grantee, that the deed was executed by the grantor understandingly and voluntarily, cannot ordinarily be overcome by evidence relating to different occasions. *Massey v. Huntington,* 118 Ill. 80; *Turner v. Gambert,* 19 Idaho, 339; *Will of Ball,* 153 Wis. 27; *Boardman v. Lorentzen,* 155 Wis.

566; *Kelly v. Perrault,* 5 Idaho, 221; *Curtis v. Kirkpatrick,* 9 Idaho, 629.

So, too, the rule is well established in this jurisdiction in the case of gift or voluntary conveyance from parent to child, no presumption of fraud or undue influence arises, as between the parties thereto, from the mere fact of the relation. *Gibson v. Hammang,* 63 Neb. 349.

And it is also true that—"The undue influence which will avoid a deed is an unlawful or fraudulent influence which controls the will of the grantor. The affection, confidence and gratitude of a parent to a child which inspires the gift is a natural and lawful influence, and will not render it voidable, unless this influence has been so used as to confuse the judgment and control the will of the donor." *Hacker v. Hoover,* 89 Neb. 317.

But if it be contended that we have unduly narrowed the scope of the controlling evidence, still it is thought we are attaining the same conclusion if we broaden the scope of our investigations and include the life story of all the actors in this transaction as revealed in the record before us, giving full force and effect to the relations which it is claimed have existed between this grantor and grantee for many years, and due consideration to the possibilities that the "undue influence" Anna F. Curson had acquired over her mother was a continuing one, asserted by her mere presence, effective though silent, forceful though unspoken. Does this situation call for the application of the doctrine announced in *Gibson v. Hammang, supra,* as follows: "But where a conveyance from a parent to one of several children by way of gift, *prima facie,* is not a just or reasonable disposition of the parent's property, and the age and physical conditions of the parent, the proportion of the property conveyed to the whole estate, and the circumstances surrounding the gift suggest fraud and undue influence, the transaction should be closely scrutinized, and the burden is upon the donee to overcome the presumption of fact arising from such circumstances." As we view the evidence the facts are not such as call for the application of this rule.

We do not find that the disposition of the property made by Mary D. Little by way of gifts, of which these deeds evidence one, is *prima facie* unjust or unreasonable. Nor does her age and physical condition, "the proportion of the property conveyed to the whole estate," and the circumstances surrounding the gift, suggest fraud or undue influence in the execution of these deeds.

It is to be remembered that a simple problem was not presented to Mrs. Mary D. Little in dividing the property owned and controlled by her in an equitable manner between her children, but she used and divided her property so as to correct the evils and injustice, incident to an unjust disposition of property made by the late husband in his last will and testament. Whatever the controlling factors which influenced each of the members of the Little family were, the record before us contains indisputable proof that all the members of the family, including plaintiffs herein, regarded the provisions of the will in question as unjust and all joined in endeavoring to overthrow its validity.

We fully realize that the estimates and appraisals contained in the record may not be absolute, but they afford approximations sufficiently accurate for the purpose at hand. There can be no question that Mary D. Little deemed that her daughters, Anna F. Curson and Lula M. Scott, had been unjustly dealt with by their father. Actuated by a desire to right the wrong, Mary D. Little transferred her home residence in California of the value of $8,500 to Anna F. Curson; also, out of her individual share of $268,-000 she paid $84,500 the entire amount required to be paid by the terms of the compromise, of this sum $49,500 in cash is paid to the "charities," in satisfaction of all rights possessed by the terms of the will, which were to participate in the division of the trust estate to the extent of $112,000 of the corpus besides certain income provisions.

It seems fairly certain that Anna F. Curson received no special benefits from the arrangement made with the charities. Mary D. Little, also out of said sum of $84,500, satisfied the claim of a grandson who bases his rights upon

the right of her deceased daughter, Emma, and also satis-field all attorneys' fees and costs involved in the litigation.

Thereafter, in addition to the two deeds which were con-tested in this action, and which, together, convey a fee simple title to an undivided one-third interest in Lincoln, Nebraska, real estate, of the value of $108,000, to Anna F. Curson, Mary D. Little executed two conveyances to Lula M. Scott of property in California of the approximate valua-tion of $65,000.

Mary D. Little died in 1920. After her death, instead of the distributions intended by her husband, the distribu-tion of the "Little fortune" had been, through her efforts, readjusted as follows: Heir of daughter, Emma, $10,000; Anna F. Curson, $124,000; Lula M. Scott, $65,000, $500 an-nuity for life; Delphina Little, $500 annuity for life; plain-tiffs, three-fourths of $457,000, to be received in three equal payments, 1921, 1931, 1941, and also, excepting the amount of annuities mentioned, all profits accruing from trust estate payable to them annually; also benefits from the $114,000 paid them by Mary D. Little, which inures to the trust estate through the settlement made by Mary D. Little.

In view of the entire history of the "Little fortune," we do not find that *prima facie* the conveyances questioned in this litigation are either unjust or unreasonable, nor are the proportions of the property conveyed to the whole es-tate, nor the circumstances that surround the gift, sug-gestive of fraud or undue influence. The defendant devoted 23 years of her life to the service of her mother. There may be some disagreement in the opinions of witnesses as to the character, or rather the quality, of the services ren-dered, but there can be no question but that these services were preeminently satisfactory to the mother. Her last years were spent wholly relieved from cares which other-wise would have been extremely burdensome.

Therefore, giving due consideration to all evidence, and determining the matter *de novo*, we arrive at the conclusion in agreement with the determination of the trial court.

The judgment of the district court is

AFFIRMED.