EFFIE M. LUND, APPELLEE, V. ELIZABETH WOODWARD ET AL., APPELLEES: WILBURN W. EVANS ET AL., APPELLANTS.

291 N. W. 90

FILED MARCH 15, 1940. No. 30744.

*Huber D. Addison* and *Sidney T. Frum,* for appellants.

*Harry E. Siman, Fred S. Berry, Burr R. Davis* and *McKenzie & Dugan, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

CARTER, J.

This is a suit brought by Effie M. Lund to obtain a partition of a quarter-section of Wayne county land of which she claims to be the owner in fee simple of a one-fifth interest. The appeal is prosecuted from a decree ordering a partition of the land.

The record shows that in 1890 Frank O. Hildur married Mary E. Evans, a widow with five children, one of which is the plaintiff in this case. At the time of her marriage to Hildur, Mary E. Hildur was the owner of the land involved in this suit. In 1893 she conveyed the east half of the quarter to her husband, Frank O. Hildur. On July 18, 1935, she conveyed the west half to her husband and her children or their representatives, as the case may be, reserving to herself a life estate in the property. On December 17,

1937, Frank O. Hildur deeded all of his interest in said land to Mary E. Hildur for life with a remainder over to her children or their representatives, as the case may be. By virtue of these two deeds, if valid, the plaintiff, Effie M. Lund, and the defendants, Elizabeth Woodward, Wilburn W. Evans and Leona Pickerel, each became the owner of an undivided one-fifth interest in the land, and Addie F. Boileau, Wilburn Hauser, Samuel A. Hauser and Ella Hanson each became the owner of one-twentieth interest therein, all subject to the life estate of Mary E. Hildur. The life estate was terminated by the death of Mary E. Hildur on March 9, 1938.

During the course of the probate of the estate of Mary E. Hildur, claims were filed against the estate in excess of $2,000. There are no assets in the estate except the interest Mary E. Hildur may have had in the real estate involved here. The will of Mary E. Hildur left her estate, except for some small legacies, to Wilburn W. Evans, her son. The decision of the case therefore rests upon the validity of the deed of Mary E. Hildur to Frank O. Hildur dated July 18, 1935, and the deed of Frank O. Hildur to Mary E. Hildur and her heirs dated December 17, 1937.

It is contended that Mary E. Hildur was incompetent on July 18, 1935, the date she executed a deed to the west half of the quarter-section to her husband and children, subject to a life estate in herself. The evidence shows that Mary E. Hildur was 95 years of age when the deed was executed. It also shows that a guardian was appointed for her on or after July 20, 1935. Defendants called lay witnesses who testified in substance to Mary E. Hildur's physical handicaps and to a general decline of her mental faculties, especially as to a tendency toward forgetfulness. From this evidence several lay witnesses gave as their opinions that Mary E. Hildur was incompetent on the date the deed was given. Her attending physician was the only medical expert who testified and he did not state that he thought she was incompetent. Other lay witnesses were called by the plaintiff, who testified to long associations with Mary E. Hildur

up until the time of her death, and gave it as their opinion that she was not incompetent on July 18, 1935. There can be little doubt that Mary E. Hildur was weakened physically and mentally because of her advanced years. That she should become forgetful is more or less natural. This is not, however, sufficient to show that at the time of the execution of the deed she was incapable of a reasonable comprehension and understanding of what she was doing. Unless it was established by defendants that she lacked such an understanding, the conveyance will be upheld. *Blochowitz v. Blochowitz*, 122 Neb. 385, 240 N. W. 586.

There is no presumption that a person of advanced years is incapable of transacting business. The burden is upon the plaintiff to establish that fact. While great age is an important and pertinent circumstance to be considered in connection with the other evidence going to the question of mental competence, it cannot be treated as controlling. The law recognizes the right of the aged to control and dispose of their own property and their right to choose the persons who shall be the recipients of their bounty. It has long been recognized, and the world is full of proof, that the ability to think and reason clearly may alone survive the passing of youth and middle age. The evidence of defendants, in our opinion, even if undisputed, was not sufficient to deprive Mary E. Hildur of that right by a finding that she was incompetent on July 18, 1935, when the deed was executed and delivered. See *Leonard v. Shane*, 182 Ia. 1134, 166 N. W. 373. The record is barren of proof of duress or fraud being practiced upon Mary E. Hildur. The allegations of the answer in that respect were not therefore established.

It is next contended that the deed given by Frank O. Hildur to Mary E. Hildur on December 17, 1937, was procured by fraud, duress and mistake. The evidence shows that Frank O. Hildur had held the title to the east half of the quarter-section involved here since 1893. He also acquired title to one-fourth of the west half subject to the life estate of Mary E. Hildur, by the deed of July 18, 1935, heretofore discussed in this opinion. It is apparent that

some of the children of Mary E. Hildur were demanding that this real estate should be conveyed back to Mary E. Hildur and her heirs in view of her advanced age. With this in view, the guardian of Mary E. Hildur held numerous conferences with Frank O. Hildur with reference to the rights of Mary E. Hildur in the land, with the result that Hildur offered to deed a life estate in the land to Mary E. Hildur, and the remainder to her heirs in the proportions hereinbefore set out. The evidence shows that Hildur was urged by the lawyers handling the matter for the guardian and the heirs of Mary E. Hildur to get legal advice of his own choosing in order that he would thoroughly understand what he was doing. The deed was read to him a number of times and he read it himself. At the time the guardian submitted the offer to the county judge of Wayne county for approval, the county judge carefully examined Hildur with reference to it and urged him to consult his own legal counsel. The answer of Hildur was that he understood the offer thoroughly and that it was just as he wanted it. The offer was thereupon approved by the county court and the deed drawn, executed and delivered in accordance therewith. The evidence of Hildur that he thought he was conveying the whole title to Mary E. Hildur does not seem the least impressive to us after a consideration of all the circumstances. The efforts of counsel in attempting to preclude any future attempts to invalidate the conveyance by explaining its effect to Hildur, in making a full and complete disclosure to the county judge of Wayne county at the time it was submitted to him, and in urging Hildur to consult his own attorney to make certain that a complete understanding had been reached, not only show exemplary professional conduct on the part of the lawyers involved, but also preclude Hildur from claiming that he was in any way defrauded or subjected to duress and coercion. The evidence not only shows that no mistake was made, but that Hildur insisted that the offer and the deed made pursuant thereto be in the exact form in which they now appear. We necessarily conclude that the deed from Frank O. Hildur to Mary E. Hildur

under date of December 17, 1937, is in all respects valid as against the defenses set out in the answer of the defendants.

The decree of the trial court ordering a partition of the lands involved was in all respects correct and is

AFFIRMED.