ADELE KIIHNE, ADMINISTRATRIX OF THE ESTATE OF ADOLPH MILLION, DECEASED, APPELLANT, V. MILLARD E. CHARF, APPELLEE.

30 N. W. 2d 914

Filed February 6, 1948.    No. 32292.

Ralph M. Kryger, for appellant.

Roscoe L. Rice and Frederick M. Deutsch, for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LANDIS, District Judge.

CHAPPELL, J.

This suit in equity was originally prosecuted by plaintiff as guardian of Adolph Million, incompetent. Upon his death, it was revived in the name of plaintiff as administratrix. The purpose of the action was to cancel and set aside an assignment of a school-land lease executed April 25, 1946, upon the alleged grounds that Adolph Million, hereinafter called grantor, was mentally incompetent at the time of its execution, and that the contract was unenforceable, because the duty to perform it was dependent upon an act of a third person over whom neither party had any control. On the other hand, defendant sought specific performance of the contract and the quieting of title to the land in himself.

After hearing on the merits, the trial court entered its decree finding and adjudging the issues generally in favor of defendant and dismissing plaintiff's petition.

Motion for new trial was overruled, and plaintiff appealed, assigning as error generally that the decree was not sustained by the evidence and was contrary to law. We sustain those assignments because the record clearly establishes that the grantor was mentally incompetent when he executed the assignment. Viewed in that light, it will not be necessary to discuss plaintiff's second alleged ground for relief.

In this jurisdiction it is the rule that where it is sought in equity to cancel and set aside a deed or other instrument of conveyance or ownership for want of mental capacity on the part of the grantor to make the instrument, the burden of proof is on the party alleging the mental incompetency to clearly establish that the mind of the grantor was so weak or impaired at the time of the execution of the instrument that he

did not understand and comprehend the purport and effect of what he was then doing. Smith v. Black, 143 Neb. 244, 9 N. W. 2d 193; Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645.

Bearing in mind the foregoing rule, we have examined the record. There is little if any dispute in the evidence upon the primary question of mental competency.

The grantor had, during his lifetime, been a good, substantial citizen, and had accumulated some property, part of which was the school land involved. The consideration for the assignment was $3,000. Defendant's check for that amount had never been delivered to the grantor or the plaintiff, but at the time of trial it was still in the possession of the lawyer who prepared the assignment. Without dispute, improvements upon the property were worth $1,200, and the rentals for 1946, claimed by defendant as belonging to him, amounted to at least $1,200. At the time of the alleged assignment, April 25, 1946, the grantor was 71 years of age, and afflicted with senile dementia. Concededly, on May 3, 1946, just eight days after the transaction involved, he was positively incompetent to transact any business; "his mind just simply was gone." On May 24, 1946, he was placed under guardianship as incompetent by the county court, and on July 5, 1946, he was dead.

His physician, a practitioner of 47 years, who had personally known him and attended the family for 20 years, testified as a witness for plaintiff. His evidence, not disputed by medical testimony or otherwise, was substantially as follows: He examined grantor in June 1943, May 1944, October 1945, and on May 3, 1946. In 1943 and 1944, he was found to be afflicted with senile dementia, his mind growing progressively weaker. In October 1945, he had a different personality, having changed from jolly to morose, from talkative to quiet, from bright to forgetful and dull of mind.

Three or four months prior to May 3, 1946, the physician had suggested to the family that the grantor should be put under guardianship because he was not capable of looking after himself.

On May 3, 1946, he was found to be pretty much demented; in bad shape mentally. His answers were very poor; real bad; all out of line; not logical. He was then positively incompetent to transact any business, his mind just simply was gone, and it was recommended that he be looked after, committed, or something. The physician could not say positively whether or not the grantor was capable of transacting business on April 25, 1946, because he did not know his exact condition on that date, but gave as his opinion that the grantor had not been very competent for some time prior to May 3, 1946.

The record discloses that on April 24, 1946, the grantor called upon a tenant in one of his own houses and said to her: "You don't want to sell the house do you, Mrs. Dempster?" She replied: "The house isn't mine to sell, Mr. Million, it belongs to you." Thereupon he sat head down, "acted dazed," "seemed mixed up," "confused," shook his head "yes" and then shook his head "no." They went downtown where he was asked whether he would consider giving a written lease for a year with payment of rent in advance. He answered, "Yes, he would," and they went to a lawyer's office. There Mrs. Dempster said to the lawyer, "I want to make out a lease from this fellow. He is such a funny old duck and acts so funny I think I better have a lease." As stated by the lawyer, "He sat beside her and it didn't seem to be registering." However, such a lease was executed, and she paid him a year's rent in advance.

There is evidence that on April 25, 1946, the defendant and the grantor drove out to his son-in-law's farm north of Clearwater to get some papers, including the lease involved. On the way, they drove into a filling

station at Clearwater, where the grantor asked the way out to his son-in-law's farm, although he had been there many times in the last seven years. Defendant's version of that circumstance differed as to form but not substance. In any event, after a few moments the son-in-law came to the station and they followed him out to the farm.

There they got the papers, drove back to Neligh, and went to a lawyer's office. The lawyer testified for plaintiff that as they came in the grantor tossed a package on the lawyer's desk and said, "It's all in there, radio and all." His tongue seemed very thick. He did not form sentences. The lawyer thought he had been drinking. Defendant said he had noticed his condition but that he had not been drinking.

Defendant then explained the details of the transaction and, upon inquiry as to the particulars, the grantor would shake his head "yes." The lawyer prepared the assignment involved, and it was executed in his office. Some time later, the lawyer wrote a letter to counsel for defendant, which was offered in evidence by defendant's counsel as a part of defendant's case. That letter, speaking of the grantor and the transaction involved, read in part: "I talked with him on different occasions from that day on and am definitely of the opinion that he knew very little of what he was doing and as a matter of fact a few days after the deal was made he was unable to carry on a conversation. * * * I am certain in my own mind that he was far from competent at the time we made out the lease, * * * I don't think that he was competent to legally transact the business that was done, but I acted in good faith and I am sure that Bus (defendant) did likewise."

Other witnesses testified for plaintiff with relation to the mental condition of the assignor between March 1, 1946, and May 3, 1946. They detailed at length and with particularity, facts, circumstances, and conditions, together with acts and conduct of grantor not only

different in character but also corroborative of those heretofore recited, all supporting plaintiff's contention that the grantor was mentally incompetent at the time of execution of the instrument. To repeat them would but unduly prolong this opinion.

On the other hand, the evidence adduced by defendant directly controverted but little of the evidence offered by plaintiff.

A physician who saw the grantor for the first time a week or ten days prior to his death on July 5, 1946, testified for defendant. His testimony in effect was that the grantor was very ill at that time and he advised hospitalization as the only way to care for him. The witness, never having previously met the grantor, refused to give an opinion concerning his mental condition prior to that time, because he did not know just how serious the forerunner of his condition was.

Two witnesses testified for defendant that they saw the grantor in their places of business several times between March 1 and May 3, 1946, and did not notice anything unusual, different, or peculiar in his conduct. One such witness, it will be observed, said the grantor appeared to him just as competent in May, when admittedly he was positively incompetent, as he did in March.

Defendant himself, who had known the grantor for many years, testified that he saw no difference in the grantor prior to or on the day of the transaction. He admitted, however, that he told the lawyer "what he wanted, what we was in there for" at the time of the transaction, but testified that he never heard or knew anything about the grantor being incompetent until the lawyer told him about it a few days later.

In our view, the evidence clearly established that the mind of the grantor was so weak and impaired at the time of the execution of the assignment of the school-land lease that he did not understand and com-

prehend the purport and effect of what he was then doing.

Therefore, we conclude that the cause should be and hereby is reversed and remanded, with directions that the trial court enter a decree finding against defendant and in favor of plaintiff, as prayed in her petition.

REVERSED AND REMANDED WITH DIRECTIONS.