HERMAN EGGERT, GUARDIAN OF MARY A. SCHROEDER,
INCOMPETENT, APPELLANT, v. FREDERICK E. SCHROEDER
ET AL., APPELLEES.
62 N. W. 2d 266

Filed January 22, 1954.   No. 33426.

*Cook, Cook & Line,* for appellant.

*Spear & Lamme,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an action commenced in the district court for Dodge County by Herman Eggert, guardian of Mary A. Schroeder, an incompetent, against Frederick E. Schroeder and Myrtle A. Schroeder. The purpose of the action is to have set aside a certain deed executed by Mary A. Schroeder to the defendants. The basis on which such relief is sought is that the grantor was, at the time of the execution of the deed, mentally incompetent and that it was obtained by undue influence. Trial was had on November 17 and 18, 1952. The trial court found generally for the defendants and dismissed plaintiff's petition. His motion for new trial having been overruled plaintiff took this appeal.

As stated in Wiskocil v. Kliment, 155 Neb. 103, 50 N. W. 2d 786: " 'Actions in equity, on appeal to this court, are triable de novo in conformity with section 25-1925, R. R. S. 1943, subject, however, to the rule that when the evidence on material questions of fact is in irreconcilable conflict this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite.' Sopcich v. Tangeman, 153 Neb. 506, 45 N. W. 2d 478."

George and Mary A. Schroeder, whom we shall herein refer to either as the parents or as father or mother, lived on a farm in Burt County, Nebraska. There they raised their family consisting of three children who are George E., at the time of the trial 62 years of age and

the oldest, Matilda C., at the time of the trial 60 years of age and the second oldest, and Frederick E., at the time of trial 57 years of age and the youngest. Matilda was married in 1914 and became Matilda C. Rewinkel. She thereafter left the parents' home, living first in Leigh, Nebraska. Later, in 1925, she moved from there to Denver, Colorado. She has lived in Denver ever since, becoming a widow in 1945 when her husband died.

The parents retired from the farm in 1921 and moved to Fremont, Nebraska, purchasing a home located at 749 East Military Avenue. The title to the home was placed in the name of the mother and is the property herein involved. When the parents retired from active farming they owned two farms in Burt County consisting of a total of 320 acres. At the time the parents retired in 1921 son Frederick E. married and he and his wife, Myrtle A., the appellees here, moved onto the home farm. At that time son George E. was farming the other place. George E. continued to farm it until 1925. Then he left the farm and has since lived at various places. At the time of the trial he was living in Las Animas, Colorado.

Appellees stayed on the home place until 1936. Then they moved to Oakland, Nebraska. The father died in January 1943. Shortly thereafter appellees moved to Fremont, doing so on April 26, 1943. Until they could find a place in which to live they stayed with the mother, doing so until September 26, 1943. They continued to live in Fremont until the latter part of 1947 when they moved to South Dakota. However, they returned to Fremont about February 10, 1948. On their return they again lived with the mother until about March 1, 1948, when they were able to get a place for themselves. They have lived in Fremont ever since.

When the father died he gave the mother the life use of the farms and, subject thereto, gave each of the children a one-third interest therein. Up until September 1951, the family seems to have gotten along very well.

Although he never lived in Fremont it appears that in late years son George E. would come to Fremont about twice a year to visit his mother. He usually came on either the 4th of July, Labor Day, or Thanksgiving and would stay a day or two. Likewise Matilda, who never lived in Fremont, would come to visit her mother once or twice a year. She would usually stay a week or 10 days. The mother always paid the expenses of her trips. In fact it would appear the mother wanted Matilda to come and stay with her but apparently Matilda did not want to leave Denver. The appellees, with the exceptions already noted, have lived in Fremont since shortly after the father's death. Although the mother, since the father's death, has always taken care of her business it does appear that her son Frederick E. helped her manage the farms. It also appears he helped her take care of her yard and garden and did many other odd jobs for her. The evidence shows appellees were in every way kind to and considerate of the mother and interested in her welfare.

On February 5, 1951, the mother called the appellees' home by telephone and wanted to talk with her son Frederick E. When informed he was not home she left word for him to call. This he did. Later that day, when he came to her home, the mother advised him she was going to will the home property to appellees. This was the first information that either of the appellees had that she intended to give them the home property. Arrangements were made and on Saturday, February 10, 1951, mother and son went to the office of the mother's attorney. Then, in place of making a will, the mother executed a deed giving appellees the home property located at 749 East Military Avenue but reserving to herself the life use thereof. The deed, after its execution, was immediately placed of record.

Matilda, while visiting her mother in July 1951, discovered what her mother had done. Shortly thereafter, on September 1, 1951, she and George E. filed a petition

in the county court for Dodge County seeking the appointment of a guardian for their mother. The petitioners alleged therein that she was incompetent to take care of her property. A hearing to determine this issue was held by the county court on September 21, 1951. On November 29, 1951, the county court found the mother to be incompetent and appointed appellant the guardian of her person and property. Appellant qualified and is now acting in that capacity and, pursuant to authority of the county court, has brought this action.

"The law recognizes the right of the aged to control and dispose of their own property and their right to choose the persons who shall be the recipients of their bounty." Lund v. Woodward, 137 Neb. 689, 291 N. W. 90. See, also, Blochowitz v. Blochowitz, 122 Neb. 385, 240 N. W. 586, 82 A. L. R. 949.

"Courts should not set aside the disposition of property made by will or deed without good reasons, based upon clear and satisfactory proof." Woodring v. Seibold, 136 Neb. 647, 287 N. W. 75.

" 'The undue influence which will avoid a deed is an unlawful or fraudulent influence which controls the will of the grantor.' Clark v. Holmes, 109 Neb. 213." Little v. Curson, 114 Neb. 752, 209 N. W. 737. See, also, Blochowitz v. Blochowitz, *supra*.

"A case of undue influence is made out where it is shown by clear and satisfactory evidence (1) that the testator or grantor was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it; (4) that the result appears to be the effect of such influence." Gidley v. Gidley, 130 Neb. 419, 265 N. W. 245.

"* * * undue influence is never presumed but that the one attacking an instrument on the ground that its execution was so procured has the burden resting on him to prove that fact." Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645.

"The rule is well established in this jurisdiction, in a

case of gift and voluntary conveyance from a parent to a child, no presumption of fraud or undue influence arises as between the parties thereto from the mere fact of the relation." Little v. Curson, *supra.*

" 'The affection, confidence and gratitude of a parent to a child which inspires the gift is a natural and lawful influence, and will not render it voidable, unless this influence has been so used as to confuse the judgment and control the will of the donor.' Hacker v. Hoover, 89 Neb. 317." Little v. Curson, *supra.* See, also, Borgmann v. Borgmann, 110 Neb. 318, 193 N. W. 711; Blochowitz v. Blochowitz, *supra;* Kucaba v. Kucaba, *supra;* Parkening v. Haffke, 153 Neb. 678, 46 N. W. 2d 117.

Other than the fact that appellee Frederick E. Schroeder helped his mother transact some of her business and manage her farms, which would give him the opportunity to exercise it, there is no evidence to sustain any of the other elements of undue influence. In this respect we have not overlooked, in examining the evidence, that: "* * * the circumstances under which a conveyance was made, the condition of the grantor at the time, and the injustice to him and his heirs, if it is upheld, may be such as to cast upon the grantee the burden of showing that it is untainted with undue influence, imposition or fraud, but is the intelligent and deliberate act of the grantor." Gidley v. Gidley, *supra.*

In discussing this, we said in Kucaba v. Kucaba, *supra:*

"* * * when a party seeking to set aside a conveyance because of undue influence establishes facts which show the relationship of the parties and their dealings to be such that a presumption of undue influence arises therefrom, the burden then shifts to the party seeking to sustain such conveyance to introduce evidence to overcome such presumption and in the absence thereof a decree should be entered against him.

"It is impossible to lay down any hard and fast rule in cases of this kind as to when a presumption of undue influence arises. The rule must of necessity be applied

according to the particular facts and circumstances of each case in which the question arises. It may generally be stated that if the facts and circumstances of a case show such a confidential, fiduciary or trust relation that it would be inequitable to sustain the deed in question then such presumption arises and the burden of going forward with the evidence rests upon the grantee to show the bona fides thereof."

We do not think the facts and circumstances disclosed by the record before us establishes a situation in which it would be inequitable to sustain the deed in question. In fact, we think the exact opposite is true.

"The rule of law is well settled that, to set aside a deed on the ground of want of mental capacity on the part of the grantor, it must be clearly established that the mind of the grantor was so weak or unbalanced at the time of the execution of the deed that he would not understand and comprehend the purport and effect of what he was then doing. Clark v. Holmes, 109 Neb. 213; Schley v. Horan, 82 Neb. 704; West v. West, 84 Neb. 169." Blochowitz v. Blochowitz, *supra.*

As far back as Mulloy v. Ingalls, 4 Neb. 115, we said: "* * * mere imbecility or weakness of mind, however great, will not avoid a deed or contract unless there be evidence to show a total want of reason or understanding, * * *."

And more recently this court, in quoting from Brugman v. Brugman, 93 Neb. 408, 140 N. W. 781, held in Kucaba v. Kucaba, *supra,* that: " 'It is not every weakness of mind rising from old age or sickness, or other causes, that will avoid a deed. There must be a total want of reason or understanding. * * * Mere mental weakness will not authorize a court of equity to set aside an executed contract. * * * In order to vacate a deed on the ground of mental incapacity of the grantor, it is necessary to show such a degree of mental weakness as renders the maker of the deed incapable of understanding and protecting his own interest. The mere

circumstance that the mental powers have been somewhat impaired by age or disease is not sufficient, if the maker of the deed still retains a full comprehension of the meaning, design and effect of his act, * * *.' "

That a grantor did not understand and comprehend the purport and effect of what he did when he executed the deed may be established by the opinion of nonexpert witnesses if proper and sufficient foundation therefor has been laid. See, In re Estate of Wahl, 151 Neb. 812, 39 N. W. 2d 783; In re Estate of Witte, 145 Neb. 295, 16 N. W. 2d 203.

As stated in In re Estate of Wahl, *supra:* "A nonexpert witness who is shown to have had a more or less intimate acquaintance with a person may be permitted to state his opinion as to the mental condition of that person, if said condition becomes a material subject of inquiry, by giving the facts and circumstances upon which the opinion is based."

" 'Where it is sought to cancel a deed for the want of mental capacity of the grantor to make the instrument, the burden of proof is on the one who alleges the mental incapacity.' Hitchcock v. Guilliams, ante, p. 522." Little v. Curson, *supra.* See, also, Blochowitz v. Blochowitz, *supra;* Kucaba v. Kucaba, *supra;* Borgmann v. Borgmann, *supra;* Kiihne v. Charf, 149 Neb. 271, 30 N. W. 2d 914.

The evidence shows the mother was 80 years of age when she executed the deed. But, as said in Lund v. Woodward, *supra:* "There is no presumption that a person of advanced years is incapable of transacting business. * * * It has long been recognized, and the world is full of proof, that the ability to think and reason clearly may alone survive the passing of youth and middle age."

After the father died the mother continued to live in the home and take care of it and herself, doing the cooking, household duties, and some of the work in the yard and garden. She also attended to her business,

although her son Frederick E. helped her in this regard and in the management of the farms. As is common with people of advancing years her memory started to fail and on occasions she did not recognize relatives, old friends, and familiar places; she would become confused in directions and in knowing just where she was; and she would repeat what she had already said and questions she had already asked. But the evidence shows she knew who her children, the natural objects of her bounty, were; that she knew what property she had; and that she knew what she wanted to do with it. Under all the facts we cannot say she made an unnatural disposition of the home property. In fact we think she fully understood and comprehended the purport and effect of what she was doing when she executed the deed.

Having come to the foregoing conclusions, we affirm the action of the trial court.

AFFIRMED.