EUGENE RULE, CONSERVATOR OF THE ESTATE OF EMMA RULE, APPELLANT, V. RICHARD ROTH ET AL., APPELLEES.

261 N. W. 2d 370

Filed January 11, 1978. No. 41261.

John McArthur and A. James McArthur, for appellant.

Perry, Perry, Witthoff & Guthery and Thomas M. Haase, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is an action brought by a conservator to set aside a real estate purchase agreement and deed on the grounds of undue influence and misrepresentation. The trial court found plaintiff failed to sustain his burden of proof and dismissed the petition. We affirm.

The action involves a 92-acre tract purchased by Emma Rule in 1957 for approximately $94 per acre. She immediately rented the land to defendants who were tenants on an adjacent 148-acre farm she owned. Defendants had farmed the 148 acres since 1954, pursuant to an oral agreement whereby Emma Rule was to receive 40 percent of the crops produced, plus a cash rental for the farm house and pasture. A different rental arrangement was made on the 92 acres. Defendants were to pay the taxes on the land each year, plus an amount equal to 3½ percent of Mrs. Rule's investment. In addition, defendants were to improve the land and clean up debris caused by a tornado.

In January 1974, Richard Roth inquired of Mrs. Rule whether she would consider selling the 92 acres. She asked him what it was worth to him and he said $19,000. Mrs. Rule, who was then 80 years of age, said this figure was too high and made a counteroffer of $15,000, which defendant accepted. At Mrs. Rule's suggestion, Richard Roth set up a meeting for them with her attorney. A real estate purchase agreement was drafted by Mrs. Rule's attorney and executed by the parties on March 18, 1974. For income tax reasons the sale was made on an installment basis, with closing to be on January 15, 1976. The transaction was actually closed and the deed recorded on January 9, 1975.

Conservatorship proceedings were commenced in

the county court on December 20, 1974. Eugene Rule, the son of Emma Rule, was appointed her conservator. He instituted this action on February 18, 1975. The conservator does not contend his mother is incompetent. He does argue the defendants exerted undue influence over her and made misrepresentations concerning the advisability of selling the land.

Defendants concede they paid less than the fair market value of the land. Their own expert appraised it at $300 per acre, or $27,600. Plaintiff's expert testified the property, at the time of the sale, had a fair market value of $55,000.

Apart from the appraiser, plaintiff's only witness was Emma Rule herself. The case is somewhat unique in that she testified she was not influenced by the defendants, knew that other land in the area was selling for a higher price, and was still satisfied with the deal she made.

Emma Rule was asked by the attorney for the conservator if she felt in making the sale she was making a gift to Mr. Roth. Her answer was: "Not a gift, but I was doing some return for his kindness and thoughtfulness." When she was asked if it was her belief she was getting all the land was worth, she replied, "I told you I didn't live for money only." She was asked: "Was it your belief then that you were getting every dime the land was worth?" Her reply, "Well I am not figuring down to dimes, I got what I wanted and that was that." She was asked if she knew what the land was worth at the time she sold it. Her answer was, "Who does?" Her attention was called to a question and answer in the deposition: " 'Question: Did you think you were getting what it was worth?' And your answer: 'Yes.' "

The following questions and answers in response to questions in Emma Rule's deposition are pertinent: "Q. And did I ask you this question and did you give this answer? 'Question: Do you mean by

that, if you had taken $19,000 from Mr. Roth, you would be robbing him? Answer: I would.' A. Yes, I would. Q. 'Question: That was your feeling? Answer: I'd taken something I didn't think belonged to me.' Was that your feeling? A. Yes, sir. Q. And did I ask you this: 'And is that the reason you refused the $19,000 and sold it for $15,000? Answer: Yes, sir.' And was that your feeling? A. Yes, sir, it is today. Q. Did Mr. Roth at anytime during that conversation tell you what he thought the land was worth? A. No, I didn't ask him, he farmed it and he knew what it produced and how hard he had to drive around to get to his patches of crops and that was that. Q. Did he tell you that? A. No, he didn't. Q. Did he ever tell you what he thought it was worth? A. I didn't ask him. Q. But did he tell you? A. No, he didn't, he hasn't yet. Q. Very well. Did you tell him then that you would sell him the land for $15,000? A. I did."

The transaction was completed in Crete, Nebraska, at the office of Mrs. Rule's attorney, Joseph Vosoba. Mrs. Rule's husband and Mrs. Roth waited in the waiting room while Mrs. Rule and Mr. Roth conducted the business, completing the transaction in Mr. Vosoba's office. Mr. Vosoba testified he had seen Mrs. Rule in his capacity as an attorney on two or three prior occasions. He noticed no apparent change in her from those previous meetings. He asked about the purchase price because he thought it was low. One or both of the parties stated that part of the land was good and part of it was very poor. There was a discussion of the income tax consequences to Mrs. Rule and the contract was set up on an installment basis. Prior to the signing of the real estate purchase agreement and the deed, all the parties, including Mr. Rule and Mrs. Roth, had copies of the agreement and indicated that it was satisfactory.

Mr. Vosoba testified there was nothing to indicate

to him there was any fraud or undue influence involved in the transaction.  In his opinion Mrs. Rule was competent to enter into the conveyance.  Mr. Vosoba was asked if the consideration of the terms of the rental agreement for the 92 acres would change his judgment as to her competency.  His answer was:  "No, I don't believe it would, Mr. McArthur, I still would feel that at that time she was competent because my acquaintance of this lady led me to believe that she was very self-reliant, independent, had a mind of her own, she might not do what I would think she should, but I think she would do what she wanted to."

The misrepresentation relied on by the conservator is the testimony of Mrs. Rule that she had told Mr. Roth she intended for her grandchildren to have the 92 acres and he said:  "* * * he could settle with me and we didn't have to wait for anybody to die to get it and then he said in a way it would be easier this way, he would be sure to have it because it would be handy for him and he could pay me anytime and I would have that settled with."

Mrs. Rule testified she also told Mr. Roth:  "Well he told me it was quite expensive to go through the selling of something like that and that all had to be paid for out of the sale."  In answer to a question as to whether he had told her anything to the effect that her grandchildren would be better off if she sold him the 92 acres, she replied, "No, he didn't."

After refreshing her recollection from the deposition relative to what Mr. Roth may have told her, she was asked,  " 'What did he tell you?' "  Her answer:  " 'Well he just — I can't remember word for word, but either way I could understand that selling it now, I was ahead because after it was being divided, after my death, there would be various bills to pay.' "  The record then is as follows:  "Q. And did I ask you this question and did you give this answer?  'Question: Did he tell you you would do better to sell the land and not

leave it to your grandchildren? Answer: He did that.'
A. Well they got it anyway. Q. But he did tell you
that, did he not? A. I am not sure of that. Q. Did
I ask you this question and did you give this answer?
'Question: And did you believe him? . Answer:
Yes, I did and I still do.' A. I still do. Q. Is that
correct? A. I still do. Q. All right, Mrs. Rule, you
did believe absolutely what Mr. Roth told you? A.
I did and I could see through it, it was possible.''

The following principles are required herein. To
sustain a finding of undue influence in the case of a
deed it must be shown by clear and satisfactory evi-
dence: (1) That the grantor was subject to such in-
fluence; (2) that the opportunity to exercise it ex-
isted; (3) that there was a disposition to exercise it;
and (4) that the result appears to be the effect of
such influence. Guill v. Wolpert, 191 Neb. 805, 218
N. W. 2d 224 (1974).

It is impossible to lay down any hard and fast rule
in cases of this kind as to when a presumption of
undue influence arises. The rule must of necessity
be applied according to the particular facts and cir-
cumstances of each case in which the question
arises. Generally, it may be said that if the facts and
circumstances show such confidential, fiduciary, or
trust relationship that it would be unequitable to sus-
tain the deed in question, then such presumption
arises, and the burden of going forward with the evi-
dence rests upon the grantee to show the bona fides
thereof. Guill v. Wolpert, *supra*.

The court, in examining the matter of whether a
deed was procured by undue influence, is not con-
cerned with the rightness of the conveyance, but
only with determining whether it was the voluntary
act of the grantor. The fact that the grantor has
others who are proper subjects to receive his bounty
can be considered by the court only as it bears upon
the validity of the conveyance. See Guill v. Wolpert,
*supra*.

The undue influence which will void a deed is an unlawful or fraudulent influence which controls the will of the grantor. Eggert v. Schroeder, 158 Neb. 65, 62 N. W. 2d 266 (1954). A much more advantageous sale could have been made of the land. That, however, is not the question for decision herein. The question is whether or not the Roths were guilty of unlawful or fraudulent influence which controlled the will of Mrs. Rule.

The trial court, who saw the witness and observed her demeanor while testifying, found that the conservator had not sustained his burden of proof. Analyzing the elements necessary to sustain a claim of undue influence, we consider this case in the light of the four guidelines suggested above. The evidence does not show that Emma Rule was subject to undue influence. It is true that an opportunity to exercise it did exist. There is no showing there was a disposition to exercise it, although it may be argued that the result appears to be the effect of such influence. The proof in this case falls far short of meeting the test necessary to reverse the finding of fact made by the trial judge who was in a position to observe the competency of the grantor.

The grantor was represented in the transaction by an able attorney who had represented her in the past and who was convinced of her competency. His testimony is entitled to great weight. Gaeth v. Newman, 188 Neb. 756, 199 N. W. 2d 396 (1972). Her husband was present at the time the deed was executed and read the papers before he signed them. No facts about her husband are contained in the record. The only witnesses produced by the plaintiff were the grantor and her appraiser. Their testimony was supplemented by portions of a deposition of Richard Roth. One of the plaintiff's attorneys took Emma Rule's acknowledgement to the petition for the appointment of a conservator. He testified he felt she was competent at the time she signed the applica-

tion for a conservator, and understood the nature of what she was doing. The acknowledgement was taken November 1, 1974.

The mere existence of a confidential relationship, assuming a sufficient one existed in this case, does not void a conveyance. As a general rule, the conveyance is valid if it appears that the grantor had competent or disinterested advice or acted voluntarily, deliberately, and advisedly, with full knowledge of the nature and effect of her act, and not because the confidential relationship influenced her. See Golgert v. Smidt, 197 Neb. 667, 250 N. W. 2d 628 (1977).

An action based on undue influence is an action in equity and is to be tried de novo on appeal. Our review of the record convinces us the conservator did not meet his burden of proving the four prerequisites to sustain an action for undue influence by clear and satisfactory evidence. The decision of the trial judge is correct and is affirmed.

AFFIRMED.