FLORA HACKER ET AL., APPELLANTS, V. FREDERICK E. HOOVER, APPELLEE.

FILED MAY 23, 1911. No. 16,452.

1. **Deeds: VALIDITY: MENTAL CAPACITY.** In determining the mental capacity of a grantor to execute a deed, if it clearly appears that when the deed was executed the grantor had the capacity to understand what he was doing, knew the nature and extent of his property, what he had done and what he proposed to do with it, and to decide intelligently whether or not he desired to make the conveyance, it cannot be said that he was incompetent or incapable of executing the instrument.

2. ———: ———: UNDUE INFLUENCE: PARENT AND CHILD. The undue influence which will avoid a deed is an unlawful or fraudulent influence which controls the will of the grantor. The affection, confidence and gratitude of a parent to a child which inspires the gift is a natural and lawful influence, and will not render it voidable, unless this influence has been so used as to confuse the judgment and control the will of the donor.

3. **Evidence** examined, and found to require an affirmance of the judgment of the district court.

APPEAL from the district court for Nemaha county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*E. B. Quackenbush* and *C. F. Reavis,* for appellants.

*H. A. Lambert, Kelligar & Ferneau* and *Stull & Hawxby, contra.*

BARNES, J.

Action to set aside a deed to 156 acres of land situated in Nemaha county, Nebraska, made to the defendant, Frederick E. Hoover, by his mother, Harriet Hoover, executed, acknowledged and delivered on the 24th day of October, 1898. The defendant had the judgment, and the plaintiffs have appealed.

It appears, without question, that Harriet Hoover, who was a widow about 68 years of age, on the 14th day of July,

1898, made, executed and delivered to her son, the defendant herein, a deed to the land in question, which contained a reservation in the nature of a life lease; that in October following she saw a statement in a newspaper to the effect that such a deed had been declared void, and that immediately thereafter she went to the office of the county judge of that county, called his attention to the newspaper article, and insisted on executing the deed in question. At the same time she required the defendant to execute and deliver to her a life lease of the premises by another instrument, thus protecting herself from any loss of her means of support during the remainder of her life.

It further appears, without dispute, that Mrs. Hoover and her husband purchased the land in question as early as the year 1857, and took title thereto in her name; that Doctor Hoover died, leaving her a widow with four children, in 1876; that from that time until her death, with some short intervals, she together with her family, including the plaintiffs, made this land their home until the early spring of 1898; that she permitted the defendant and his brother Edward (who died some years ago), together with the plaintiffs, to farm certain portions of the homestead and take the proceeds thereof for themselves, with the exception of her own support and maintenance, which seems to have been furnished to her by the defendant; that when the plaintiff, Mrs. Hacker, married the first time, she brought her husband, whose name was Bucheneau, to the family home, where they remained for some time before they left for a home of their own elsewhere; that Bucheneau was a man of profligate and dissipated habits, and his wife procured a divorce from him, when she and her three small children returned to the family home, where her children were raised and practically educated by the bounty of their grandmother, which came from the proceeds of the farm; that this state of affairs continued until after Mrs. Hacker married her present husband. It also appears that, in the year 1879, Hattie Hoover, the other daughter of the grantor, married one Linder Bradfield, who seems to have

been a person without property, and brought him to live at the family home; that thereafter, and until the early spring of 1898, Bradfield farmed that portion of the premises, the use of which was claimed by his wife and Mrs. Hacker; that his conduct was not satisfactory to Mrs. Hoover, and especially so much of it as related to his selling a span of horses claimed by his wife. This seems to have caused Mrs. Hoover to serve a notice upon him to quit the premises, and, as he desired and was about to move to Oklahoma, an arrangement was perfected by Attorney Cornell, acting for the Bradfields, by which they claimed and took away from the premises about $1,500 worth of personal property, leaving to Mrs. Hoover very little, if anything, of value, except the farm. In this trouble Mrs. Hacker took sides with her sister, Mrs. Bradfield, and this so incensed their mother, and she was so impressed with what she thought was the injustice of the transaction, that she declared to them that, if they persisted in depriving her of her property in that manner, it was all that they would ever get. This was in May, 1898, and in October following the deed in question was executed.

To reverse the judgment of the district court, the plaintiffs contend: First, that Mrs. Hoover was incompetent by reason of her mental condition to execute the deed in question; second, that the deed was procured by the undue influence of the defendant.

As to the first question, the plaintiffs attempted to show that their mother was an habitual user of opium, and that by its excessive use she had so weakened her mental faculties that she was incapable of transacting any business and was mentally incompetent to make the conveyance. It appears that Mrs. Hoover was in the habit of taking small quantities of gum opium from time to time during most of her life; but, notwithstanding the evidence produced by the plaintiffs, it seems clear that the amount which she took was so small that it did not affect her mental capacity to any extent whatever. Doctor Bell Andrews, who was the family physician, and who testified most strongly

against her competency, said that he did not think she took opium in sufficient quantities to have affected her mind. It also appears beyond question that for months at a time she voluntarily quit taking the drug, and did not use it at all at her death. This shows that it had little, if any, effect upon her. She was not in any sense an opium fiend, and her health up to a short time before her death was good. Mrs. Hacker testified that her mother was a rugged woman up to the time of her first stroke of paralysis, which was in 1900, and about two years after the deed in question was made. The most complete proof of her perfect sanity and her competency to transact business is Mrs. Hoover's own testimony, taken in April, 1905, which was nearly seven years after making the deed, and after she had suffered one paralytic stroke. This testimony is intelligent and coherent, and is a consistent statement of the transaction. It clearly appears therefrom that she knew all about her property, where she got it, how long she had had it, how it had been managed, and what she had done with it. It also shows that she had a remarkable strength of will of her own, and she possessed the ability to answer all questions put to her on her cross-examination clearly and intelligently. She appears to have quickly caught the object and purpose of the attorney in putting the questions to her. In short, her evidence discloses that she was a woman of intelligence; that she possessed great clearness of mind and memory, which was remarkable in a woman of her age. From her own testimony and the testimony of her friends and neighbors covering many years, including the year in which the deeds above mentioned were made, we are satisfied that she was a woman of sound mind, perfectly competent to execute the deeds at the time she did; that she had no delusions whatever, and, while she felt that perhaps she was not doing what her friends and neighbors expected her to do, neverthless she was determined to do it. She knew what property the plaintiffs had taken, and that they had not had any part of the farm, and she was not laboring under any delusion on that subject. She says

she told her daughters at the time of the settlement in the spring of 1898 that if they took the property which they did take they would never get anything more. As above stated the evidence shows that she was capable of taking care of herself. She did not deprive herself of the use of her property, as is usual in such cases, but took a life lease on it, and thereby retained its use as certainly as if the deed had not been made. It appears that she had no intention of letting the defendant beat her out of this property, or of depending alone upon him for her support. There was nothing improvident in her conduct, and we are satisfied that the district court correctly held that she was competent to make the deeds at the time she made them, and remained so from that time until her death.

Plaintiffs' second contention presents a more difficult question for our determination. Ordinarily a deed or gift from a parent to a child does not raise a presumption of undue influence; but in the instant case the circumstances and the relations between Mrs. Hoover and her son, who is the defendant, were of such a nature that, taken with her disposition of the property, seem to require him to assume the burden of proving that the making of the deed in question was not caused by any undue influence on his part. *Gibson v. Hammang*, 63 Neb. 349. The law, however, is well settled that if the grantor was competent to convey, and the conveyance was her voluntary act and deed, it is valid, no matter how inequitable it may appear to the court. In this case the land was Mrs. Hoover's, and, if she acted freely and intelligently in the matter of disposing of it, she could do with it as she pleased. Therefore the only remaining question is: Did the defendant have such influence over his mother that he induced her to deed the property to him against her real wish and desire, and contrary to what she would have done if he had not abused her confidence by using his influence to induce her to convey to him what she really desired to divide between all of her children alike?

The mere fact that she gave him the property is not

sufficient to prove undue influence. She had the right to do that if she really desired that he should have it in preference to the others. The most that can be said for the evidence on the part of the plaintiffs is that it shows the defendant had a desire to have the property and he had an opportunity to use his influence in order to get it. There is no direct evidence, however, that he did so use his influence at any time, and the plaintiffs' case in that respect rests upon circumstantial evidence alone. As opposed to this, we have the testimony of the grantor herself, taken and perpetuated as provided by law, from which it appears that she knew better than any one else why she made the deed. She testified positively and without equivocation that she was not persuaded or induced by any person whomsoever to make the deed; that she did it of her own free good-will, and this was stated repeatedly, and her evidence is fully supported by the testimony of the defendant. She stated clearly when she made the deed and why she made it; that it was done after long and careful deliberation. She says that she talked the matter over with the defendant, and that he did not say anything one way or the other, but she supposed, like any one else, that he was willing to take the farm; that he would be a fool if he would not. It seems clear from the evidence that the trouble arose out of the settlement above mentioned which was made between Hattie Bradfield and her mother in the spring of 1898. The old lady believed that the daughter had wronged her in that transaction; that Mrs. Bradfield had taken too much personal property, and that she had been left destitute. It is apparent that she had some trouble with her son-in-law; that she did not like him; and this trouble had something to do with her making the deed. It may be true that Mrs. Bradfield did not take any more than she was entitled to, and that Mrs. Hacker did not get anything except the bounty which had theretofore been provided by her mother in rearing and educating her family of small children; but Mrs. Hoover knew just what they got, what they had theretofore had, and believed,

up·to the time of her death, that they were getting in that settlement what they were not entitled to. She said on her cross-examination in answer to the question: "Q. What did you say to them, and what did you do with reference to keeping them from taking this stuff you speak of? A. I told them if they took it they would never get anything more, that's what I told them." Whether her action was right or wrong is not a question for us to decide. The court is not the keeper of her conscience. The question for us to determine is whether she acted freely and voluntarily in the matter. If she did, her action was final and is binding upon the court, no matter what we may think of its justice or equity. The evidence satisfies us that Mrs. Hoover was a much stronger character than her son Fred, and there is very little likelihood of his having influenced her against her will. We are of opinion he could have only done so by actual fraud or falsehood, and upon those questions there is no evidence in the record. The fact that the defendant had the opportunity and probably the desire to influence his mother to make the deed is not sufficient to overcome her direct and positive testimony that he did not so influence her or attempt to do so, but that she acted of her own free will and accord in the matter. Where the evidence clearly shows competency and perfect freedom on the part of a grantor in making a deed, the court will not be justified in setting it aside. *Sawyer v. White,* 122 Fed. 223; *Schley v. Horan,* 82 Neb. 704; *Fjone v. Fjone,* 16 N. Dak. 100.

From a careful consideration of all of the evidence, we conclude that the trial court did not err in holding the deed in question valid. There is contained in the briefs some discussion of the statute of limitations, but our conclusions, as above stated, render it unnecessary to consider that question. We are of opinion that the judgment of the district court was right, and it is therefore

AFFIRMED.