CLARA DAY BROEKER ET AL., APPELLANTS, V. SAMUEL N. DAY ET AL., APPELLEES.

FILED FEBRUARY 1, 1933. No. 27924.

318

*Frank P. Voter* and *Frederick M. Deutsch,* for appellants.

*H. E. Burkett* and *Clarence E. Haley, contra.*

Heard before ROSE, GOOD and DAY, JJ., and FROST and MESSMORE, District Judges.

FROST, District Judge.

This is a suit by appellants, plaintiffs below, to cancel *inter vivos* gifts by deeds on the ground of mental incompetency of the grantor and undue influence of the grantees. The appellants are some of the heirs of the donor, Posey Day, while the appellees are the son of the donor and the son's wife, with whom the donor lived at the time of making the conveyances, which admittedly were made without any pecuniary consideration.

One of the conveyances which it is sought to set aside was made by the donor to his two sons, Samuel and Bert, by deed dated November 16, 1928, which sought to convey all of the real estate of the donor. Shortly thereafter one son, Bert, died and a second conveyance was made to Samuel dated February 8, 1929, to convey the interest which the father had received as the heir of Bert. It is the appellants' contention that at the time of the execution of these deeds the grantor was mentally incompetent to make them and that they were not the acts of the grantor but were procured by the undue influence of the grantees. It is asked that these deeds be canceled, the title quieted, and an accounting for rents and profits be made. Since the making of these deeds and before the bringing of this suit, Posey Day had died.

The appellees, on the other hand, contend that long prior to making these conveyances the donor had expressed an intention to do so, and that the conveyances were in furtherance of that intention and no undue influence was exercised by the grantee or his wife to pro-

cure them; and also that the donor was competent to make them.

The court found generally for the defendants, appellees here, and quieted the title of the premises in Samuel N. Day.

In the assignments of error, the appellants contend that the court erred in admitting the testimony of Samuel N. Day and of his wife, Clara Day, as the same pertained to transactions or conversations with the deceased; that the findings in the decree are contrary to the evidence, which demonstrates the confidential and fiduciary relationship between the donees and donor, and the presumption of fraud and undue influence arising therefrom has not been overcome; and that the evidence clearly demonstrates the mental incompetency of the grantor.

The record in this case is very voluminous and has been read and parts of it reread more than once in the preparation of this opinion. The court is grateful to the attorneys who assisted by extensive abstracts of the testimony which call attention to the salient points in the bill of exceptions. The legal questions have been carefully briefed and ably argued. However, there is nothing particularly new in the propositions of law involved in this case. The questions of fact, however, are quite troublesome and it has been difficult to reach a satisfactory conclusion therefrom. We will review briefly the legal propositions which are urged by the respective parties as they apply to the evidence.

The grantor in making a conveyance is presumed to have mental capacity sufficient for that purpose and the burden of proof is upon the one who alleges the want of such capacity. *Brugman v. Brugman*, 93 Neb. 408; *Keedick v. Brogan*, 116 Neb. 339. In determining the mental capacity of the grantor to execute the deeds, it is important to determine whether he understood what property he was conveying, to whom the conveyances were made, and whether he had definitely and intelligently determined to transfer all his property to one heir to

the exclusion of all others. *Brugman v. Brugman,* 93 Neb. 408; *Hacker v. Hoover,* 89 Neb. 317; *In re Guardianship of Wessel,* 114 Neb. 704; *Keedick v. Brogan,* 116 Neb. 339.

The undisputed facts in this case show that the two deeds which it is sought to cancel were in the nature of gifts *inter vivos* made by the father, Posey Day, first to the two sons, Bert Day and Samuel N. Day; and, second, a further deed from the father to Samuel N. Day to convey the interest of Bert Day, which the father had inherited upon the death of Bert Day. No presumption of undue influence arises between the parties to those deeds from the mere fact of the relationship which existed between the parties to these instruments. *Gibson v. Hammang,* 63 Neb. 349; *Nelson v. Wickham,* 86 Neb. 46; *Little v. Curson,* 114 Neb. 752.

However, an entirely different situation arises under the facts as they develop from the testimony in this case. It appears that the father, Posey Day, went to live with his two sons about one year before his death. Perhaps it would be more accurate to say he went to live with his son Samuel N. Day and the latter's wife, as Bert Day was a single man already living with them. He first made a deed of all his real estate to Samuel and Bert, but reserving to himself the possession and use so long as he should live. This reservation was put in at the suggestion of the banker and notary public who prepared the instrument. Shortly after this deed was executed Bert Day died, and the father, Posey Day, then made a second deed to Samuel N. Day which conveyed the interest that he inherited from Bert. This deed contained no reservation entitling the grantor to the use and profits of the property during his lifetime. The evidence further shows that the grantor in these deeds had a living daughter and also children and grandchildren of a deceased daughter, all of whom were his legal heirs. At the time he made these deeds he was 79 or 80 years of age and considerably broken in health. He sought no independent

advice, the deeds in each case being prepared by persons employed by his son Sam. Under these circumstances the law requires that the court should closely scrutinize anything done by the donees to secure the deeds in question and the burden is on them to overcome the presumption that the gifts were secured through undue influence. *Gibson v. Hammang,* 63 Neb. 349; *In re Estate of Noren,* 119 Neb. 653.

Not all influences will avoid a deed. Influences which arise out of the affection, confidence and gratitude of a parent to a child and inspire a gift are natural and lawful influences and will not render such a gift voidable. It is otherwise, however, where influences have been such as to confuse the judgment and control the will of the donor. If the act done is not the act of the donor himself but is simply carrying out the will of another, then that is an undue and unlawful influence and will avoid acts done on account thereof. *Hacker v. Hoover,* 89 Neb. 317; *Gibson v. Hammang,* 63 Neb. 349; *Brugman v. Brugman,* 93 Neb. 408.

In this case there is almost a total lack of evidence showing any urging or importuning by either of the defendants to secure the execution of the deeds. There is one bit of evidence that does have a material bearing upon that question, to wit, that of Martha Petty, the sister of the deceased. She stated that her brother told her that he did not do anything and that Sam had it all arranged before he knew anything about it. However, to meet this the defendants have both testified that the donor never was asked to execute the deeds, but that he was the moving party in bringing about their execution. Many other witnesses who had been much about the home testified that they had never heard the matter discussed between son and father or between the daughter-in-law and father. Possibly this testimony might not have very much significance, as you would hardly expect such a question to be discussed in the presence of a third party.

There is another bit of testimony which is significant in its bearing upon the deeds being the voluntary and intelligent acts of Posey Day, to wit, the testimony of Samuel N. Day of finding a letter of E. W. Miller, the real estate man who was the agent who acted for the owner in the sale of the farm to Posey Day back in the year 1900. Samuel N. Day testified the father had told him before this land was bought that, if he and Bert would come to Nebraska and help him pay for and develop the farm, they could have it when he was through. That testimony would have little weight in itself because neither Samuel nor Bert at that time were of age and naturally would expect to come with the father to Nebraska. However, when it is coupled with the statements in the letter of this real estate agent which pretty conclusively shows that Posey Day had asked him to have the title made to Bert and Samuel then that is an entirely different question. The testimony of J. W. Linkhart, one of the owners of the real estate, as to whom Posey Day wanted the title to run, substantiates the statements in the letter and goes a long way to establish the contention of the defendants that it had been the purpose of the father during all these years, even before the farm was actually acquired, that the title should go to the two boys.

The testimony shows that Posey Day executed a will, the date of which is not clearly indicated. This will gave the real estate to the two sons, Bert and Samuel, but Posey Day told third parties that the girls were to receive their share, indicating that he had imposed an obligation upon the sons to pay the daughters something; but what the testator had in mind as to the amount of that share is not disclosed by the testimony. This will was destroyed after the testator went to live with Samuel; but whether by Posey Day or by another is not clear. The fact this will was made does not necessarily indicate that Posey Day had changed his apparently long-fixed determination to give the farm to the boys. It does indicate that at the time of making the will he intended

that the girls should have a share but not the title to any portion of the real estate. As already stated, there is little testimony showing any effort on the part of Samuel or his wife to secure deeds from Posey Day. There was plenty of opportunity for importunities along that line while Posey Day was living in their home. However, undue influence cannot be established by merely showing opportunity for its exercise. *In re Estate of Bainbridge,* 121 Neb. 695. In this case George Bainbridge from time to time had distributed a considerable portion of his property to his different children. Two or three years before his death he made a will devising all the property he then possessed to one daughter to the exclusion of the other children. He had earlier made a deed to the same effect. Two years prior to his death his health failed and the favorite daughter came into the home and took charge and cared for him. After his death the will was contested charging the testator with being incompetent and that the will was procured by undue influence. The court took the question of undue influence from the jury and submitted only the question of competency of the testator. The jury found the testator competent and the case was then taken to the supreme court. In reviewing the case in this court it is stated in the opinion: "We are unable to find any competent evidence that undue influence was exercised in procuring the making of the will. The most that may be said is that there was opportunity for such influence to be exercised; but mere opportunity is insufficient."

The question has been raised as to the competency of the different parties to this action to testify, for the reason that they have a direct legal interest in the result and are all representatives of the deceased. In our opinion none of them were competent to testify over proper objections. In some instances the testimony was received by the court and ruling reserved. In others the objections were overruled. Where ruling was reserved we do not find any record of one having been entered later in the

trial. Section 20-1202, Comp. St. 1929, clearly states that the parties to this suit were incompetent to testify, unless the adverse party had introduced witnesses who testified in regard to the transaction or conversation in question, and then the incompetent parties may be examined in regard to the facts testified to by such witnesses. The same incompetency applies to a spouse of a party who claims interest in real estate, under the present law in Nebraska. *McEntarffer v. Payne*, 107 Neb. 169. "One claiming as heir is the representative of a deceased person." *Brown v. Forbes*, 1 Neb. (Unof.) 888. However, the court will presume that, even though incompetent evidence was received, the trial court ignored all such evidence in making its findings and decree. The trial court having before it other witnesses who were competent, that is sufficient to sustain the judgment rendered when considered in connection with the testimony of competent witnesses giving evidence upon transactions and conversations concerning which the other side had offered testimony.

As already stated, the testimony in this case is exceedingly contradictory. Many apparently disinterested witnesses have given testimony that it is impossible to reconcile with that given by apparently equally credible witnesses called by the opposing side. It is fair to presume that most of these witnesses, especially those not related to any of the parties, were entirely honest in what they said. Some had seen Posey Day when he had a fainting spell or had lost his way on the streets of his home village, while others who are equally close were certain that they had seen nothing of that kind. Two doctors were called on each side. Three testified as experts only, having had no personal contact with Posey Day. The fourth, Dr. Lutton, had treated Posey Day for some two years of his life, to wit, from 1925 to 1927, but had not examined or treated him during the last two years before his death. While not certain of his figures, Dr. Lutton had taken Posey Day's blood pressure in 1925 and again in 1927, and he thought it had increased from

180 in 1925 to 200 in 1927. In his opinion this increase was due to the hardening of the arteries of his patient, arterio sclerosis, and the immediate cause of his death was apoplexy, which followed in the natural development of that disease. These medical men were asked hypothetical questions which assumed many details that were not essential to the question asked and that did not assist as a basis for the expression of an expert opinion. These hypothetical questions assumed facts which were sharply controverted and this materially lessened the force of the conclusions of the respective doctors. The testimony does not justify the conclusion that Posey Day, when he made the conveyances, was of unsound mind to the extent that he did not know what he was doing. This conclusion is amply justified when you couple with it the long-settled purpose of Posey Day to give the farm to the boys.

It is hardly necessary to say that an old man who has become more or less childish, whose mentality is materially weakened, is more or less susceptible to the influence of those with whom he is in close contact and in whom he places confidence. However, what has been said as to mental capacity to deed applies to the question of whether undue influence was exerted. A long-settled determination to deed to certain persons seems to justify the conclusion that when a deed is made to those persons the grantor is following out his own desires rather than yielding to the influence of others.

It should not be the purpose of the court to question the righteousness of a conveyance, but only to determine whether that is the voluntary act of the grantor. In other words, the court is concerned in knowing whether a conveyance is made by one possessed of a mind competent to act and that he has acted without any undue persuasion. The fact that the grantor has others who were so related to him that they were proper subjects to receive his bounty can be considered by the court only as it bears upon the validity of that conveyance. The case of *Hacker v. Hoover*, 89 Neb. 317, is a similar case, and

the main question was: Did the favored son use the opportunity which he had to persuade his mother to deed property to him instead of dividing it among all of her children? The court in its opinion say: "The mere fact that she gave him the property is not sufficient to prove undue influence. She had the right to do that if she really desired that he should have it in preference to the others. The most that can be said for the evidence on the part of the plaintiffs is that it shows the defendant had a desire to have the property and he had an opportunity to use his influence in order to get it. There is no direct evidence, however, that he did so use his influence at any time, and the plaintiff's case in that respect rests upon circumstantial evidence alone. * * * Whether her action was right or wrong is not a question for us to decide. The court is not the keeper of her conscience. The question for us to determine is whether she acted freely and voluntarily in the matter. If she did, her action was final and is binding upon the court, no matter what we may think of its justice or equity."

This is a case in equity, and under the statutes this court is required to try the issues *de novo* without reference to the findings of the trial court. As has been stated already, the vital issues have been contested at every point and the conflicting testimony cannot be entirely reconciled. Under these conditions this court is justified in giving weight to the conclusions reached on these controverted issues by the trial judge who observed the witnesses and their manner of testifying. *Shafer v. Beatrice State Bank*, 99 Neb. 317; *McEntarffer v. Payne*, 107 Neb. 169; *Gaunt v. Smith*, 103 Neb. 506; *Maryland Casualty Co. v. Geary*, 123 Neb. 851.

While the testimony presented on the controverted questions of fact in this case is difficult of reconciliation, we believe that it establishes a desire of long standing to transfer the real estate to his sons and, upon the death of one, to the survivor. Under these circumstances we would not feel justified in coming to a different conclusion

than did the trial judge who saw the witnesses and heard them testify. The judgment of the district court is therefore

AFFIRMED.