FRANK A. PARKENING, AS EXECUTOR OF THE ESTATES OF
BERTHA PARKENING AND CHRIS PARKENING, DECEASED,
APPELLANT, V. ANNA PARKENING HAFFKE ET AL., APPELLEES.

46 N. W. 2d 117

Filed February 2, 1951.   No. 32835.

*A. L. Tidd* and *J. C. Travis*, for appellant.

*Brown, Crossman, West, Barton & Quinlan*, and *John R. Cockle*, for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action in equity brought by Frank A. Parkening, executor of the estate of Chris Parkening, deceased, in the district court for Douglas County against Anna Parkening Haffke and her husband William Haffke, for an accounting in the amount of $16,415.91, alleged to be owing by the defendants to the estate. The will was admitted to probate in the county court of Douglas County on December 10, 1947.

On December 8, 1938, Chris Parkening and Bertha Parkening, husband and wife, executed a joint will. During their lifetime they held all their property as joint tenants with the right of survivorship. Bertha Parkening died November 18, 1940, and Chris Parkening became the sole owner of all the property. He departed this life September 27, 1947, leaving eight children as his heirs, as follows: Frank A. Parkening, John Parkening, and Clara Parkening Campbell of Plattsmouth, Nebraska; Otto Parkening and Margaret Parkening Baumgartner of Beverly Hills, California; Leonard Parkening and Emil G. Parkening of Los Angeles, California; and Anna Parkening Haffke of Omaha, Nebraska.

For convenience we will refer to Chris Parkening as

Chris, Bertha Parkening as Bertha, and Anna Parkening Haffke as Anna.

The record discloses that Chris was born December 18, 1856, in Germany. Later he came to this country and engaged in farming near Plattsmouth, Nebraska, for a number of years. During August 1917, he suffered a stroke of paralysis, a cerebral thrombosis, which paralyzed his left side and left him so that he was unable to talk. It was fully a year before he regained the use of his left side and was able to talk again. He and Bertha had joint accounts in the First National Bank of Omaha, and the Plattsmouth State Bank of Plattsmouth, Nebraska. Bertha accompanied him on business transactions prior to and after he suffered the stroke of paralysis, and helped him transact business, wrote checks for him, signed his name to them, and continued to do so until her death. Due to his physical condition after 1917, Chris gave up farming, and his son John farmed his parents' land as a tenant. In the latter part of 1919 or the fore part of 1920, Chris and Bertha purchased from their son Otto property located at 4809 Douglas Street, Omaha, and moved into it. For about a year prior to October 16, 1940, Bertha had been in ill health and gradually grew weaker. On that date she and Chris had a conveyance of the Douglas Street property prepared whereby they became joint tenants therein with remainder upon their deaths to Anna Parkening Haffke a twelve twenty-seconds interest, Clara Parkening Campbell a seven twenty-seconds interest, and Margaret Parkening Baumgartner a three twenty-seconds interest. Immediately after making the conveyance Chris and Bertha moved in with Anna and her husband who resided at 2515 Himebaugh Avenue. Bertha died in her daughter Anna's home on November 18, 1940. Thereafter Chris continued to live with Anna until his death on September 27, 1947. The Douglas Street property was rented for $50 a month, and Chris was to receive the rent. On December 8, 1947, the

grantees named in the deed to the Douglas Street property sold the same for $10,500, and after the expenses incident to the sale were paid, each of the grantees received her proportionate share of the cash.

After Bertha's death Anna transacted business for her father until his death and wrote and signed checks on the accounts in the First National Bank in Omaha and the Plattsmouth State Bank. On October 28, 1942, two signature cards were procured from the aforementioned banks for the purpose of creating joint accounts with the right of survivorship in Chris and Anna. These were signed and delivered to the banks. The manner of procuring these signature cards, the signing thereof, and the handling of the accounts in the banks constitute the principal controversy in this litigation.

When an equity action is appealed to this court, this court, under the statute, in determining the questions of fact is required to reach an independent conclusion without reference to the findings of the district court. If, however, the record discloses an irreconcilable conflict in the evidence on material issues, this court will, in determining the weight of the evidence of witnesses who appeared in court to testify, consider the fact that the trial court observed the witnesses and their manner of testifying. Each case of this type presents a different fact situation. While many of the cited cases are helpful in determining the issues, because of their similarity, however, the ultimate decision in this case must necessarily be based on the facts thereof. See Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645.

The trial court entered a decree to the following effect: (1) That the warranty deed executed on October 16, 1940, by Bertha Parkening and Chris Parkening of the Douglas Street property was regular in form and was the free and independent act of the grantors who were competent at the time the deed was executed and delivered, and were under no influence or duress. (2) That on October 28, 1942, the account of Chris Park-

ening in the First National Bank of Omaha became a joint account with right of survivorship of Chris Parkening and Anna Haffke, and at the time such account was created Chris Parkening was fully possessed of his mental faculties and not under any influence or duress. The account in the Plattsmouth State Bank was found to provide for the creation of two types of accounts (a) joint account payable to either or survivor, and (b) joint account, two or more signatures required. The court made a finding that by the manner and form in which this signature card was signed, only a joint account was created which did not carry with it the right of survivorship. (3) That after the death of Chris Parkening the defendant Anna Haffke illegally withdrew from the Plattsmouth State Bank the sum of $5,129.98 for which she was required to account to the estate, with interest thereon. The court also decreed that Anna Haffke paid from the funds in the Plattsmouth State Bank for the benefit of the deceased his burial expenses in a certain amount for which she should receive credit, and this amount to be deducted from the amount of $5,129.98. The court fixed this balance for which Anna Haffke should account to the estate in the amount of $4,087.09.

The executor filed a motion for new trial. Upon the overruling of same he perfected appeal to this court.

Anna Haffke filed a motion for new trial on the phase of the case dealing with the account in the Plattsmouth State Bank, alleging that the court erred in not finding and decreeing that this account was a joint account with right of survivorship. This motion for new trial was overruled and defendant Anna Haffke perfected cross-appeal from this part of the decree.

The appellant assigns as error: (1) The findings and decree of the trial court are not sustained by sufficient evidence, and (2) are contrary to law. In this connection appellant's contention is that the trial court erred in not finding and decreeing that on October 28, 1942, when the joint account cards were signed, Anna Haffke oc-

cupied a confidential and fiduciary relationship to her father Chris Parkening who at that time was at an advanced old age, enfeebled, and incompetent to transact business to the extent that he could not legally create joint bank accounts with the right of survivorship. (3) The trial court erred in not finding that the joint account card to the First National Bank of Omaha was procured by the defendant Anna Haffke by undue influence on her part over her father Chris Parkening, and was therefore invalid. This contention is also made with reference to the joint account card to the Plattsmouth State Bank. (4) The trial court erred in awarding the defendant Anna Haffke the right to set off the amount of funeral expenses against the sum of $5,129.98 which the district court found she had no legal right to withdraw from the account in the Plattsmouth State Bank after the death of her father Chris Parkening. (5) The trial court erred in not requiring the defendants to account for the rents from the Douglas Street property.

It appears from the appellant's brief that the conveyance of the Douglas Street property is not directly attacked. It is evident the appellant contends that Chris Parkening, at the time the conveyance was made, was mentally incompetent to transact business and was under the influence of Anna Haffke who stood in a confidential, fiduciary relation to him. The trial court took cognizance of this conveyance and made specific findings with reference to the mental condition of Chris Parkening at the time the conveyance was made.

The evidence as to the conveyance of the Douglas Street property is not in much dispute. The record discloses that for about a year prior to October 16, 1940, when this conveyance was made, Bertha was in ill health and Anna was required to go to the Douglas Street home and take care of her parents. Bertha gradually grew weaker and required more care and attention, so on the date heretofore mentioned, the conveyance of the Douglas Street property was made with the grantees

as heretofore specified. Clara Campbell, a daughter of Chris and Bertha, testified that it was her understanding that the person with whom her parents were going to live and make their home would get the largest share of the Douglas Street property for their care and keep. Her parents did not desire to live with her because her home lacked modern conveniences. An acquaintance of Chris and the family testified that Chris told him he was going to stay in the Haffke home and pay them for keeping him and taking care of him. A grandson of Chris and Bertha testified that Bertha was desirous of making a division of the estate. She felt that the boys had had enough of the estate and were also provided for in the will, and the girls should receive as much as the boys. However, she said Anna was the oldest and she intended to give her more of a share than the other girls for the reason that Anna had helped rear the little children, had not received much when she was married, and did not have the opportunity to take music lessons or attend high school. The counsel who prepared the conveyance testified as to the details in connection therewith, Chris' interest by asking questions as to the effect of the conveyance, and that in his opinion Chris was competent to make the conveyance and to transact business at that time.

"In order to vacate a deed on the ground of mental incapacity of the grantor, it is necessary to show such a degree of mental weakness as renders the maker of the deed incapable of understanding and protecting his own interest." Little v. Curson, 114 Neb. 752, 209 N. W. 737.

The rule is well established in this jurisdiction, in a case of voluntary conveyance from a parent to his child or children, no presumption of fraud or undue influence arises as between the parties thereto by the mere fact of the relation. See Little v. Curson, *supra*.

"The affection, confidence and gratitude of a parent to a child which inspires the gift is a natural and law-

ful influence, and will not render it voidable, unless this influence has been so used as to confuse the judgment and control the will of the donor." Hacker v. Hoover, 89 Neb. 317, 131 N. W. 734. See, also, Little v. Curson, *supra*.

In determining the mental capacity of the grantor to execute a deed, if it clearly appears that when the instrument was executed the grantor had the capacity to understand what he was doing, knew the nature and extent of his property and what he proposed to do with it, and to decide intelligently whether or not he desired to make the conveyance, it cannot be said he was incompetent or incapable of executing the instrument. See Broeker v. Day, 124 Neb. 316, 246 N. W. 490.

The decree of the district court was correct in holding the conveyance of the Douglas Street property valid.

This brings us to the proposition as to whether or not the signature cards signed and delivered to the banks constituted joint accounts with the right of survivorship. The district court found and decreed that the account in the First National Bank of Omaha was a joint account with the right of survivorship, and that the account with the Plattsmouth State Bank was a joint account but did not carry with it the right of survivorship. The latter proposition will be subsequently dealt with in the cross-appeal of Anna Haffke.

Clara Campbell testified that the day before her mother's death in 1940, she and her sister Anna were present with their mother when their mother told Anna she should go to the bank, take this witness with her, and see if she could get permission to sign her name to their father's checks for him; that she had previously done that because his physical condition was such that he did not want to do it; and that he wanted Anna to be his agent to that extent. This witness further testified that she and Anna went to the First National Bank of Omaha; that Anna told the man at the window that her mother was ill and unable to write any more checks, and her

father's condition was such that he was unable to do so; and that they wanted to give her the right to sign her name on her father's checks under his name. Anna, from the date of her mother's death, assisted her father in transacting business in the same manner in which her mother had previously.

In July or August 1941, Chris, the Haffkes, and one of their sons, took a trip to California to visit relatives. They were gone for about six weeks. Upon their return Chris requested his grandson Earl Haffke to obtain signature cards from the banks to enable him to create a joint account with Anna. Earl delayed the matter and questioned his grandfather with respect to creating the joint accounts. Finally Earl Haffke did procure a signature card from the First National Bank of Omaha, and William Haffke wrote the Plattsmouth State Bank and procured a signature card. Chris and Anna signed the cards in the presence of Earl Haffke, and they were delivered to the banks.

A niece of Chris testified that while she was visiting in the Haffke home for a period of three weeks or more in 1944, she had a conversation with Chris. He told this witness he had made a joint account with Anna, and said: "* * * I feel after I die I want her to have something, because I have not given her anything, nor she has never charged me for anything; I have given her once in awhile a little, but I never paid her for staying here. * * * When I first came up I made up my mind I would divide, * * * but, * * * I noticed the others never had the time to have me, or they were too busy, and they did not have a modern home, and I made up my mind that I wanted to keep my home there. That was the reason I made this joint account in the bank." He also stated that he had told Clara, John, and Frank. They were angry about it, especially Clara, and he told her that it was his money and he was going to do as he wanted to do with it.

A neighbor and friend of Chris and the Haffke family

who lived in close proximity to the Haffke home, on this phase of the case testified that in 1943, he had a conversation with Chris wherein they were discussing the will of the witness' mother, and Chris told this witness he had made a joint account with his daughter Anna to take care of all his expenses during the remainder of his days; that upon his death she was to have the remainder for the trouble and expense of taking care of him; and that he could draw out of the account as well as Anna could.

An attorney who had transacted legal business for Chris and Bertha in the conveyance of the Douglas Street property, and with whom Chris' grandson Earl Haffke was associated, testified that he talked to Chris in his law office either in 1943 or 1944, and visited with him with reference to making a will. Chris told this witness that he put all his money in the bank in a joint account, with the right of survivorship with Anna, and was afraid that Anna would have trouble with the other children when he died. He further testified that at the time Chris was competent to transact business.

Chris also had a similar conversation with a neighbor who had taken care of the household during the absence of the Haffkes, in which Chris said he had a joint account with Anna; that if anything happened to him it went to Anna; and that if anything happened to Anna it was still his money. He told this witness the banks the accounts were in, and that he was going to stay with Anna and finish his life. She testified that at the time, in her opinion, he was mentally competent.

In July 1943, when his daughter Margaret Baumgartner was visiting the Haffke home, Chris told her: "Do you know, that I have now made out my joint bank account with my Anna?" He stated he was planning to live with Anna, and that was the reason he made the arrangement. He wanted to provide for her. He also stated that there might be some argument about this among the rest of the children, and he said: "I

really don't care; I don't owe them anything, and I feel like I do want to do the right thing with my Anna." She further testified that at the time, in her opinion, he was normal and competent.

There is no denial by any witness that at the time Chris Parkening lived with his daughter Anna Haffke and her husband he was properly and adequately taken care of and provided for in all respects as to his comfort and companionship with them.

In addition to the evidence as heretofore stated, we have examined the testimony. In determining the value thereof we have considered the relationship if any to the parties; the length of their acquaintance with Chris and the closeness thereof; their interest if any in the outcome of the litigation; the purpose, nature, and frequency of their visits; their opportunity for observation; the nature and subject matter of their conversations; the failure of Chris to recognize his relatives or friends; and all of the other facts and circumstances which they gave as the basis of their opinions. Suffice it is to say that this evidence is in great preponderance that at all times until the date of his death Chris Parkening was competent to transact business, to accomplish the ordinary affairs of life as a normal person, knew the property that he owned, the objects of his bounty, and the distribution he desired to make of his property. To further detail this evidence would unnecessarily lengthen this opinion.

The testimony of his youngest daughter, Margaret Baumgartner, who has a beneficial interest in the outcome of this litigation, and that of her doctor husband who had examined Chris physically and observed him on many occasions, is also persuasive evidence as to his mental competency to transact business to the time of his death and that in fact, for his advanced years, his condition was exceptional both mentally and physically.

It is essential to the validity of a gift that the donor shall have sufficient mental capacity to make his gift.

The general rule is that, if the donor has sufficient mental capacity to comprehend the transaction, if he understands the extent and value of his property, what persons are the objects of his bounty, and the manner in which he is distributing his property among them, his gift will be valid. See 38 C. J. S., Gifts, § 13, p. 789.

"It is a well-settled doctrine that all of the facts necessary to constitute a valid gift inter vivos may be inferred from subsequent declarations of the donor, which are in the nature of admissions by him·against interest. Such statements are admissible in evidence as tending to show that he had given the property to the donee." In re Estate of Vanicek, 145 Neb. 531, 17 N. W. 2d 477. See, also, In re Estate of Dayton, 121 Neb. 402, 237 N. W. 303; Jones v. Ewart, 143 Neb. 717, 10 N. W. 2d 708; Annotation, 105 A. L. R. 398.

As heretofore stated, it is the appellant's contention that Anna Haffke, standing in a confidential, fiduciary relation to her father Chris Parkening, asserted undue influence over him by virtue of which she acquired the joint bank accounts in question.

The burden of proof is on the party asserting undue influence to prove by a preponderance of the evidence (1) that the grantor, testator, or donor was a person who would be subject to such influence, (2) that there was an opportunity to exercise such influence, (3) that there was a disposition to exercise such influence, and (4) that the result was the effect of such influence. See In re Estate of Thompson, ante p. 375, 44 N. W. 2d 814.

The evidence adduced by the appellant on this phase of the case is insufficient to prove undue influence on the part of Anna and William Haffke as required by the burden of proof.

While great age is an important and pertinent circumstance to be considered in connection with the other evidence going to the question of mental competence, it cannot be treated as controlling. The law recognizes the right of the aged to control and dispose of their

own property and their right to choose the persons who shall be the recipients of their bounty. See Lund v. Woodward, 137 Neb. 689, 291 N. W. 90.

There is no clear and satisfactory evidence in this case that Chris Parkening was subject to such influence. A disposition to exercise such influence is not clearly and satisfactorily shown, and the joint account cards in the banks do not appear to be the result of undue influence, but are the result of the execution of a plan by Chris for the distribution of his money in such bank accounts. The appellant's contention is without merit.

This brings us to the cross-appeal of Anna Haffke, wherein she contends the court erred in failing to find that it was the intention of Chris Parkening to create a joint account with the right of survivorship in the Plattsmouth State Bank on October 28, 1942; and that the district court erred in failing to find that the deposit in the Plattsmouth State Bank, payable to either Chris Parkening or Anna Haffke, created ownership in Anna Haffke of the account upon the death of Chris Parkening.

Exhibit 89 is a joint account payable to either or survivor, the title of the account being "Chris Parkening and Anna Parkening Haffke," to the Plattsmouth State Bank, and is as follows:

"JOINT ACCOUNT—PAYABLE TO EITHER
OR SURVIVOR

"We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be, our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor.

"It is especially agreed that withdrawals of funds by

the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

Chris Parkening and<br>
Anna Parkening Haffke<br>
"JOINT ACCOUNT—TWO OR MORE<br>
SIGNATURES REQUIRED

"All moneys now or at any time deposited by us, with this bank to the credit of this account, are and shall be so deposited by us and received by the bank upon the following terms and conditions of repayment namely: that the amount thereof shall be paid by the bank to us, or upon the written order of any one such persons so entitled to payment; and without reference to the original ownership of the moneys deposited, all withdrawals must contain one of the following signatures.

X  Chris Parkening<br>
Chris Parkening and Anna Parkening Haffke<br>
Chris Parkening and Anna Parkening Haffke."

The signature "Chris Parkening" written on the top line of the top half of the card was written by Anna Parkening Haffke without the consent of Chris Parkening.

At the time the exhibits 88 and 89 were made, Chris Parkening was 85 years, 10 months, and 10 days of age.

The contention of the executor, in addition to those previously determined, is that the manner and form in which exhibit 89 was signed by Anna Parkening Haffke constituted a forgery on her part and invalidates the instrument as to the right of survivorship.

The president of the Plattsmouth State Bank with which Chris Parkening had done business since 1921, and who was known by the banker since 1917, testified that prior to October 1942, Chris and Bertha Parkening had an account with the bank. On the date exhibit 89 was presented to the bank, Anna Parkening Haffke, William Haffke her husband, and Chris Parkening were present. This witness asked Chris what he wanted to do about the signature on the card, to which Chris replied

that he wanted to fix the account so that either he or his daughter could withdraw the mony at any time. The banker then took the card, went to the ledger sheet, and put Anna's name at the top of the sheet along with Chris' name. He did not see the signatures when they were written on the card. He further testified that at the time Chris was competent to transact such business.

Section 8-167, R. S. 1943, provides: "When a deposit in any bank in this state is made in the name of two or more persons, deliverable or payable to either or to their survivor or survivors, such deposit, or any part thereof, or increase thereof, may be delivered or paid to either of said persons or to the survivor or survivors in due course of business."

In the case of McConnell v. McCook Nat. Bank, 142 Neb. 451, 6 N. W. 2d 599, this court said: "It is clear from our decisions in construing this statute (section 8-164, Comp. St. 1929, now section 8-167, R. S. 1943) that we have held: (1) The act is intended for the protection of the bank; (2) it fixes the property rights of the persons named, unless the contrary appears from the terms of the deposit; (3) that, when a deposit is made in a bank payable to either of two or more persons, either expressly as joint tenants with right of survivorship or without those qualifying words, upon the death of one of the payees the deposit is payable to the survivor or survivors of those named in the deposit." The court further said: "We are now asked to modify our decisions and hold that a deposit payable to one person 'or' another without words of joint tenancy or right of survivorship is not within the provisions of the statute. To so hold would require us to overrule the Johnson case. (In re Estate of Johnson, 116 Neb. 686, 218 N. W. 739.) In that case, * * * we expressed our views of the legislative intent. We reiterated that statement in the Kehl case * * *. (Kehl v. Omaha Nat. Bank, 126 Neb. 695, 254 N. W. 397) * * * We feel that the legislature intended by this act to get away from the 'confusion, contradiction

and perplexing distinctions' and the uncertainties, resulting in such transactions, occasioned by the judicial opinions in the various states on this subject."

We believe that the foregoing opinion and the cases on the subject in this jurisdiction cited therein are conclusive in the instant case. The evidence is in preponderance that Chris Parkening on October 28, 1942, intended to create in the Plattsmouth State Bank a joint account with the right of survivorship in Anna Haffke. Without again setting out the testimony, it seems clear that on several occasions, to several different witnesses, he made declarations to that effect, and the terms of exhibit 89 are clearly within the range of section 8-167, R. S. 1943.

For the reasons given herein, the judgment of the district court is affirmed, except that part of the judgment requiring Anna Haffke, the cross-appellant, to account to the executor for the funds in the Plattsmouth State Bank.

It is hereby ordered and directed that judgment be entered in the district court in this cause for the cross-appellant on her cross-appeal, in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

CARTER, J., participating on briefs.