JOHN H. GAETH ET AL., APPELLEES, V. MARJORIE GAETH
NEWMAN, APPELLANT.

199 N. W. 2d 396

Filed July 14, 1972.   No. 38340.

George O. Kanouff and Curtis Bromm, for appellant.

Haessler, Sullivan & Inbody, for appellees.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and CLINTON, JJ., and BRODKEY, District Judge.

BRODKEY, District Judge.

This is an action brought by John H. Gaeth and Dennis D. Gaeth, as plaintiffs, against Marjorie Gaeth Newman, defendant, praying that a certain deed from Lydia Gaeth to the defendant, covering the west half of the southeast quarter of Section 3, Township 16, Range 8, Saunders County, Nebraska, be invalidated and set aside. There was no contention made that the grantor was mentally incompetent to make a valid conveyance, but it is claimed that the defendant obtained the deed because of undue influence. The trial court found generally in favor of the plaintiffs and vacated and set aside the deed in question, and defendant has appealed to this court.

Pertinent facts developed by the evidence are as follows: Henry and Lydia Gaeth were husband and wife

and were the parents of John H. Gaeth and Dennis D. Gaeth, the plaintiffs in this action, and also of Marjorie Gaeth Newman, the defendant. At the time of his death, Henry Gaeth owned 4 80-acre tracts of farm land in Saunders County, Nebraska, in joint tenancy with his wife, Lydia, and the parties also owned certain savings bonds. After the death of Henry Gaeth, and at the suggestion of her late husband's attorney, Lydia Gaeth gave each of her 3 children 80 acres of land, and also made each of the 3 children a joint tenant with her on $\frac{1}{3}$ of the U. S. savings bonds. Thereafter, Lydia made a will leaving the 80 acres involved in this action to her 3 children but granting to the defendant, Marjorie Newman, the right to buy it for $350 per acre, or market value, if less. Defendant, Marjorie Gaeth Newman, together with her husband, Hillis, and their 3 children lived on the 80 acres in question owned by Lydia Gaeth, and farmed it on a percentage agreement. John H. Gaeth is a speech pathologist with a PHD degree and resides in Royal Oak, Michigan. The other son, Dennis D. Gaeth, lives in Chevy Chase, Maryland, and is the owner of the majority stock in a corporation. The contacts of the sons with their mother, after the death of the father, were limited to occasional visits, although there was a certain amount of communication between them by means of correspondence, directly and indirectly.

After the death of Henry Gaeth, his widow, Lydia, continued to live on the "home place," near the farm of her daughter, Marjorie. During that period, Marjorie had complete care and supervision of her mother while she was living alone at the home place, telephoned her daily, and checked on her welfare in a regular fashion. On July 9, 1967, the mother, Lydia, became ill and moved into the home of the defendant, where she lived until her death several years later, to be precise, on April 18, 1970. There was an agreement between the defendant and her mother that the defendant was to

use the mother's funds for her care and any other things that were needed. The plaintiffs also claim the existence of a family agreement between them, by which defendant was to take care of their mother, Lydia Gaeth, in consideration of receiving the interest on $45,000 in bonds owned by Lydia Gaeth and the plaintiffs and defendant jointly, the receipt of the social security payments of Lydia Gaeth, and also the use of the 80 acres involved in this case, free from the payment of any rent.

It appears that in October of 1967, Lydia Gaeth informed the defendant that she would like to have Marjorie have the 80 acres and directed the defendant to make arrangements with her attorney to prepare the necessary papers. According to the testimony of the defendant, she told her mother "to think it over," as the brothers John and Dennis might become angry, but her mother said that she was sure and wanted to do it. Defendant further testified that a week or so later, her mother again inquired about the matter and therefore the defendant called an attorney, Arthur C. Sidner, at Fremont, Nebraska, who was a former partner of the attorney who had formerly represented Henry and Lydia Gaeth on various matters prior to Henry Gaeth's death. Mr. Sidner made an appointment to see Lydia and the defendant for November 1, 1967. He also recommended that Lydia Gaeth have a physical examination before coming to his office, and he, himself, made an appointment for such examination with a Dr. Charlotte P. Seiver, who was Lydia's family doctor. On October 24, 1967, Dr. Seiver examined Lydia Gaeth, and on November 1, 1967, the defendant and her mother kept the appointment with the attorney, Arthur C. Sidner, who, at that time presented an instrument previously drafted by him, stating, in effect, that Lydia was giving the deed to the 80 acres to the defendant, who would take care of Lydia for her life, that the deed was not to be recorded, and further

that the defendant was to make a will that the income from the property would go to Lydia for her support and maintenance. Both Lydia and the defendant refused to sign the instrument; whereupon, Mr. Sidner asked the defendant to leave the room while he talked to the mother, Lydia, alone. On returning to the room, Mr. Sidner handed defendant the signed and executed deed and also prepared a will for Marjorie's signature which protected the maker, Lydia, if Marjorie should die first. The defendant did not record the deed to the property prepared by Mr. Sidner until after the death of her mother, and the plaintiffs had no knowledge of said deed until after their mother died, at which time attorney Sidner informed them of such deed. The defendant explains this failure to record the deed on the grounds that her mother requested that she not record the deed until after her death because of the possibility it would stir up strife and friction within the family, and for the further reason that in the original document prepared by the attorney, Sidner, which both defendant and her mother refused to sign, it was also provided that the deed to the defendant was not to be recorded. The original memorandum prepared by Mr. Sidner was received in evidence at the trial and appears to corroborate defendant's claim that the deed to the defendant was not to be recorded.

Other pertinent facts should be mentioned before discussing the main issue in this case, to-wit, whether or not defendant was guilty of undue influence in procuring the deed in question, and as claimed by the plaintiffs was guilty of the breach of the confidential or fiduciary relationship between the defendant and her mother, Lydia Gaeth. It appears that during the time Lydia was living at the home of her daughter, Marjorie, and while Lydia's affairs, financial and otherwise, were being taken care of by the daughter, Marjorie, and her husband, Hillis Newman, there had been a substantial amount of intermingling of funds, and com-

mon use of funds of the mother; and that, on occasion, some of these funds which were in a joint bank account, were not used strictly for the support and maintenance of Lydia only, but on certain occasions, were also used for purposes personal to the Newman family. Defendant's explanation of this course of procedure was that it was with the agreement and understanding of her mother and with her knowledge and consent. Evidence was also adduced by the plaintiffs, particularly by the son, John, the speech pathologist, to the effect that his mother suffered from what he termed "asphasic" speech, which was explained as being the loss of continuity of thought or forgetfulness in the middle of a sentence. The evidence of whether Lydia suffered from this ailment was conflicting, and, in any event, it would not necessarily affect the mental capacity of a grantor to execute a deed. As previously stated, the mental capacity of Lydia to execute the deed in question is not an issue in this case, except, and only to the extent, that it might make her susceptible to undue influence practiced upon her.

The foregoing appear to be the significant and controlling facts, gleaned from the reading of the voluminous record in this case. We must measure these facts against the applicable principles of law involved, and a summary of some of these principles will be helpful to an understanding of this case. Other facts will be alluded to from time to time to clarify the application of the legal principles involved. The propositions of law involved in this case are for the most part well settled. The principal issue involved, as framed by the pleadings in the case, is whether the defendant, Marjorie Gaeth Newman, obtained the deed to the property involved in this case by undue influence exerted upon the grantor, Lydia Gaeth, her mother. The law is well established that the burden of proof is on the person asserting undue influence to prove by a preponderance of the evidence: (1) That the grantor,

testator, or donor was a person who would be subject to such influence; (2) that there was an opportunity to exercise such influence; (3) that there was a disposition to exercise such influence; and (4) that the result was the effect of such influence. Molholm v. Lynes, 185 Neb. 707, 178 N. W. 2d 566; Drew v. Hawley, 164 Neb. 141, 82 N. W. 2d 4; Parkening v. Haffke, 153 Neb. 678, 46 N. W. 2d 117.

The law is also well established that the affection, confidence, and gratitude of a parent to a child which inspires a gift is a natural and lawful influence and will not render it voidable unless such influence has been so used as to confuse the judgment and control the will of the donor. Conry v. Langdon, 181 Neb. 53, 146 N. W. 2d 782; Parkening v. Haffke, *supra;* Hacker v. Hoover, 89 Neb. 317, 131 N. W. 734; 26 C. J. S., Deeds, § 64, p. 777.

In this case the plaintiffs claim and the defendant concedes that at the time of the conveyance involved herein, a confidential relationship existed between the defendant and her mother, Lydia Gaeth. Where the validity of an alleged gift between persons occupying a confidential relationship is attacked, the burden of proving that a confidential relationship existed between the parties rests on the one attacking the gift. When the burden is met, the burden then rests on the alleged donee to show the validity of the gift. By virtue of defendant's admission of the existence of a confidential relationship with her mother, the burden of evidence is cast upon her to show that the deed from her mother was not tainted with undue influence but was the deliberate and bona fide act of the grantor. Molholm v. Lynes, *supra;* Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645. This court has stated that where the facts and circumstances show such a confidential, fiduciary, or trust relationship that it would be inequitable to sustain the deed in question, then a presumption of undue influence arises, and the burden of going forward with

the evidence rests upon the grantee to show the bona fides thereof. Cunningham v. Quinlan, 178 Neb. 687, 134 N. W. 2d 822. Generally speaking, any presumption of undue influence may be rebutted by competent and sufficient evidence. 25 Am. Jur. 2d, Duress and Undue Influence, § 46, p. 406. Moreover, the mere existence of a confidential relationship between grantor and grantee does not of itself show undue influence, invalidating a deed, and does not render the deed void or voidable, where the transaction is open, honest, and fair, or where the deed is made by the grantor with full knowledge of its nature and effect, and because of the deliberate desire of the grantor. 26 C. J. S., Deeds, § 63, p. 771. As a general rule, to render such a transaction valid, it is necessary to show only that the party alleged to have been influenced had competent or disinterested advice, or that he performed the act or entered into the transaction voluntarily, deliberately, and advisedly, knowing its nature and effect, and that his consent was not obtained by reason of the power and influence to which the relation might be supposed to give rise. 25 Am. Jur. 2d, Duress and Undue Influence, § 46, p. 406. One of the most important elements considered by the courts in determining whether a presumption of undue influence has been rebutted is whether the grantor has received independent advice, and there is a theory of law that removes the cloud of undue influence from a deed on a showing that the one allegedly overpersuaded had independent advice. 26 C. J. S., Deeds, § 62, p. 766. The importance of independent advice has also been recognized by this court. In the case of Broeker v. Day, 124 Neb. 316, 246 N. W. 490, in connection with an action to set aside a deed for undue influence executed by a man of advanced age and considerably broken in health, this court specifically noted at page 320: "He sought no independent advice." It should be pointed out, however, that "absence of independent advice" means the absence of an

*opportunity* to have independent advice; and certainly where the grantor has received independent advice, his act need not conform to such advice in order to validate the deed. In discussing this rule, the Supreme Court of Oklahoma stated in its opinion in the case of Montgomery v. Willbanks, 198 Okla. 684, 181 P. 2d 240 (1947): "It is to be observed that the rule does not go so far as to say that the grantor must make his acts conform to the advice. If the rule did require that, any person who desired to make a deed under circumstances similar to this would be bound to do as he was advised and his ignoring proper independent advice would be seized upon as an evidence of lack of business capacity or an unsoundness of mind. The independence of an individual to act as he chooses with respect to the disposition of his property is too valuable to be restricted by any such rules."

The evidence adduced by the plaintiffs to establish their claim of undue influence on the part of the defendant consists largely of circumstantial evidence and evidence of suspicious circumstances. While circumstantial evidence may be sufficient, the circumstances must not be equally consistent with some other rational theory deducible from the facts proved. 26A C. J. S., Deeds, § 211, p. 112. In order to establish undue influence invalidating a deed, there must be proof that the circumstances of its execution were inconsistent with any hypothesis but undue influence, which must be proved in connection with the conveyance in suit, and not with other things. Blochowitz v. Blochowitz, 122 Neb. 385, 240 N. W. 586; 23 Am. Jur. 2d, Deeds, § 148, p. 194. Of all the evidence adduced during the trial, it appears that the most persuasive upon the question of whether the defendant has sustained her burden to establish that the deed she received was not the result of undue influence on her part was that given by attorney, Arthur C. Sidner, who testified at the trial by deposition. While Mr. Sidner had not person-

ally represented Henry and Lydia Gaeth previous to this occasion, his deceased partner had represented them, and Mr. Sidner was familiar with the Gaeths and their property. When called by the defendant for an appointment for Lydia Gaeth and her daughter, he immediately sensed the problems that might arise and the trouble which might ensue as a result of Lydia preferring one of her children over her others. As a matter of precaution, he made an appointment with Lydia Gaeth's personal physician for a medical examination of Lydia, obviously to fortify himself as to her mental and physical condition, should the question subsequently arise. The doctor to whom he referred Mrs. Gaeth for an examination, thereafter reported that Lydia Gaeth was physically and mentally competent to sign a deed. Subsequent to that examination, Lydia and the defendant came to Mr. Sidner's office in connection with the preparation and execution of the necessary instruments. The following questions and answers taken from Mr. Sidner's deposition admitted in evidence at the trial are enlightening:

"Q- You testified Mr. Sidner, that you had known Lydia Gaeth for about twenty-five years. Do you have an opinion based upon that long acquaintanceship with Lydia Gaeth as to whether or not she seemed to be a woman of courage and character that could or could not be easily influenced?

"A- I have an opinion.

"Q- And what is that opinion?

"A- It is my opinion that she was a rather strong-willed woman and I would say couldn't be easily influenced. Influence is a peculiar thing where you are feeling sorry for a child. I am sure that even strong-willed people can feel sympathy for a child and make them gifts or otherwise taken advantage of.

"Q- Even a weak-willed person will do that?

"A- Yes, but I would say she was a strong-willed person and not subject to influence."

Attorney Sidner further testified that on November 1, 1967, during the discussion he had with Lydia, he had an opportunity to observe her and listen to her, and in his opinion she was very competent. In answer to a question as to whether he would say Lydia was lucid and knew her own mind, Mr. Sidner replied: "A- She certainly knew her own mind. She didn't follow my recommendations." Mr. Sidner also testified that on that occasion Lydia had told him that Marjorie was taking such good care of her, and had quit a job to do so, and that she, Lydia, felt certain obligations in connection with it, which was one of the reasons she was giving Marjorie the land; but another reason for so doing was because she felt sorry for Marjorie because of her "hard luck."

It must also be noted that after Mrs. Gaeth signed the deed prepared for her by Mr. Sidner, she acknowledged it to be her voluntary act and deed before Mr. Sidner, acting in his capacity as a notary public. This court has held that the evidence of the attorney who prepared the deed, of the notary who took the acknowledgment and of the witnesses to the execution of the deed alleged to have been obtained by undue influence exerted by the grantee, that the deed was executed by the grantor understandingly, and voluntarily, is entitled to great weight. Little v. Curson, 114 Neb. 752, 209 N. W. 737; Pike v. Triska, 165 Neb. 104, 84 N. W. 2d 311. In the case of Kucaba v. Kucaba, *supra,* this court stated: "In addition thereto, we have the testimony and the certificate of the notary before whom the deed was signed and acknowledged. 'Public policy forbids that deeds and mortgages of real estate, duly authenticated in the mode pointed out by statute, should be set aside except upon clear and convincing proof that the certificate of acknowledgment is false. The presumption is in favor of the certificate, and the burden is upon the party alleging such a defense to prove it.' (Citing cases)."

The testimony of the attorney Arthur C. Sidner, clearly substantiates the opinion expressed by most of the other witnesses who testified at the trial that the grantor, Lydia Gaeth, was a strong-willed person, not easily subjected to influence, and knew her own mind. They also substantiated the general tenor of the evidence to the effect that Lydia Gaeth was grateful to her daughter for her kindnesses to her, and also felt sorry for her because of the hard luck that she and her husband had experienced in life. It was also important because it clearly shows that Lydia Gaeth not only had the opportunity to obtain advice, but actually did obtain it; and while her attorney would have preferred that she executed the original document he drafted for her, nevertheless when she made it clear that she did not wish to do so, he acceded to her demands and drafted the instrument in the form she desired it. This was done after a private conversation with Lydia Gaeth out of the presence of her daughter, the defendant herein. As indicated by the previous citations of authority, the fact that she did not elect to follow the advice given her in no way detracts from the fact that she *had* advice. Her determination to follow her own wishes in the matter indicates her lack of susceptibility to influence on the part of others. As shown by the authorities heretofore cited, the fact she had a feeling of gratitude toward her daughter for the kindnesses demonstrated to her during her life, does not in any way raise a presumption of undue influence on the part of said child.

One point needs further commenting upon. Plaintiffs make much of the fact that the defendant and her husband commingled the funds of Lydia Gaeth with those of their own, and on occasion apparently used some of said funds for their own purposes, notwithstanding the fact of the fiduciary relationship existing between them. As previously stated, it was the testimony of the defendant that her mother, whose property it was, had agreed and consented to the arrangement and had

told her that she might use the funds for whatever purposes were necessary. It must be remembered that the arrangement between Lydia and her daughter was of a very informal nature. The rule is that in the case of an informal trust the mingling of funds is proper if such is the understanding of the parties as shown by their agreement or by custom. Pike v. Triska, *supra.*

In this case there is a total lack of evidence showing any urging by Marjorie to secure the execution of the deed. As a matter of fact, the evidence shows that the transaction was handled by Mrs. Gaeth in a private conference with her attorney, Mr. Sidner. It appears from the evidence that what Marjorie did was to take the necessary steps to carry out the express wishes of her mother, and that she has satisfactorily rebutted any presumption of undue influence which might have arisen by reason of their personal relationship. The evidence adduced at the trial of this case is as consistent with the above hypothesis as it is with the hypothesis of undue influence on the part of the defendant—even more so. In our opinion there is no evidence in the record sufficient to establish any of the required elements of proof of undue influence previously enumerated, except that of "opportunity," which in itself is insufficient. It is not, nor should it be, the purpose of the court to question the righteousness of a conveyance, but only to determine whether it is the voluntary act of the grantor. As this court has stated: " 'Whether her action was right or wrong is not a question for us to decide. The court is not the keeper of her conscience. The question for us to determine is whether she acted freely and voluntarily in the matter. If she did, her action was final and is binding upon the court, no matter what we may think of its justice or equity.' " Broeker v. Day, *supra.*

From a careful consideration of all the evidence, we conclude that the trial court erred in holding that the deed in question was invalid and the result of undue

influence on the part of the defendant. The judgment of the district court is therefore reversed, and the cause remanded with directions to enter judgment in favor of the defendant and against the plaintiffs in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.